(92 South. 490)

**ALABAMA CO. v. BROWN.  (6 Div. 135.)**

(Supreme Court of Alabama.  June 30, 1921. Rehearing Granted Oct. 6, 1921.  Rehearing Denied Dec. 21, 1921.)

On Application for Rehearing.

1. Release ⬉24(2)—Successor to administrator of employé need not return proceeds paid to predecessor before setting aside his fraudulent settlement with employer.

Where the father of a deceased employé, through fraudulent collusion with the employer, had himself appointed administrator of the employé's estate within the time in which the widow could apply for appointment, and made a settlement with the employer, the proceeds of which, under Code 1907, § 2486, were not assets of the estate, but were to be distributed directly to the widow, there being no surviving children of the employé, the widow, on having the appointment of the father as administrator revoked and herself appointed as such administrator, need not procure from her predecessor and tender to the employer the amount paid under the fraudulent settlement as a condition precedent to recovery of damages for her husband's death regardless of the settlement.

2. Appeal and error ⬉831—Second rehearing can be had on application by member of the court.

Where the original opinion reversing the judgment for plaintiff brought forth a dissent-

---

ing opinion on plaintiff's application for rehearing, it is permissible and proper to grant a second rehearing on application by a member of the Supreme Court.

**3. Death ⊜79—Damages never nominal unless there are no distributees.**

The damages recoverable for wrongful death are never nominal unless there are no distributees under the statute.

**4. Death ⊜77—Evidence held to show wife would have returned to husband if he had not been killed.**

In an action for the death of plaintiff's husband, testimony by plaintiff that she had been living with her parents since 1917, when her husband sent her there because he expected to go into the army, and that they continued to correspond, and she expected to return to him when he sent for her, *held* sufficient to warrant the jury in inferring that, if the husband had not been killed, the plaintiff would have returned to live with him, so that she can recover damages for his death.

**5. Death ⊜99(4)—Damages to widow living apart from husband reduced from $5,000 to $2,500.**

In an action for the death of an employé, evidence that widow, who was the sole distributee entitled to the damages recoverable, had been living apart from her husband for more than a year, though she had not permanently separated from him, and that during that time he was earning $3.50 per day, which he spent all on himself and contributed nothing to her support, *held* to show that a verdict awarding $5,000 damages was excessive, and must be reversed unless the plaintiff remits all in excess of $2,500.

Anderson, C. J., and Miller and McClellan, JJ., dissenting as to paragraph 1. Thomas, McClellan, and Somerville, JJ., dissenting as to paragraphs 3 to 5.

Appeal from Circuit Court, Jefferson County; Horace C. Wilkerson, Judge.

Action by Cordelia Brown, as administratrix of the estate of Albert Brown, against the Alabama Company for damages for the death of her husband. Judgment for the plaintiff, and the defendant appeals. A remittitur of damages was ordered, which having been accepted, the cause was affirmed.

Tillman, Bradley & Baldwin and T. A. McFarland, all of Birmingham, for appellant.

When a release is executed by an administrator, it is not an individual act, but is done in a representative capacity, for the administrator is the only person that can bring suit for the death of an employee. Code of 1907, § 3912; Acts 1911, pp. 483, 484; T. C. I. v. Herndon, 100 Ala. 451, 14 South. 287; L. & N. v. Trammell, 93 Ala. 350, 9 South. 870; Williams v. S. & N., 91 Ala. 635, 9 South. 77; C. & W. Ry. Co. v. Bradford, 86

Ala. 574, 6 South. 90; Stewart v. L. & N., 83 Ala. 493, 4 South. 373; Bozeman v. May, et al., 132 Ala. 233, 31 South. 491; Ex parte L. & N. R. R. Co., 124 Ala. 547, 27 South. 239.

Where, as in this case, the administrator executed a release and received $500 in settlement for the death of deceased, a subsequent administratrix, when seeking to avoid such release on the ground of fraud, must first return or offer to return the money paid. U. S. Cast Iron Pipe & Fdry. Co. v. Marler, 17 Ala. App. 358, 86 South. 103; Ex parte Marler, 204 Ala. 342, 86 South. 108; Harrison v. Alabama Midland Ry. Co., 144 Ala. 246, 40 South. 394, 6 Ann. Cas. 804; Rabitte v. A. G. S., 158 Ala. 431, 47 South. 573; B. R. L. & P. Co. v. Jordan, 170 Ala. 530, 54 South. 280; B. R. L. & P. Co. v. Hinton, 158 Ala. 470, 48 South. 546; Stephenson v. Allison, 123 Ala. 439, 26 South. 290; Beatty v. Palmer, 196 Ala. 67, 71 South. 422; Kelly v. L. & N., 154 Ala. 573, 45 South. 906; Barnett v. Stanton, 2 Ala. 181; Capital Security Co. v. Holland, 6 Ala. App. 205, 60 South. 495; Jones v. Anderson, 82 Ala. 302, 2 South. 911; St. L. & S. F. R. R. Co. v. McCrory, 2 Ala. App. 531, 56 South. 822; American Sales Book Co. v. Pope & Co., 7 Ala. App. 304, 61 South. 45; Harkey v. Mechanics' Co., 62 Ark. 274, 35 S. W. 230, 54 Am. St. Rep. 295; Babcock v. Farwell, 245 Ill. 14, 91 N. E. 683, 137 Am. St. Rep. 284, 19 Ann. Cas: 74; Chicago R. R. Co. v. Curtis, 51 Neb. 442, 71 N. W. 42, 66 Am. St. Rep. 456; Johnson v. Merry Mount Granite Co. (C. C.) 53 Fed. 569; Chicago, etc., R. R. Co. v. Pierce, 64 Fed. 293, 12 C. C. A. 110; Hill v. Northern Pacific, 113 Fed. 914, 51 C. C. A. 544; Memphis St. Ry. v. Giardino, 116 Tenn. 368, 92 S. W. 855, 8 Ann. Cas. 176.

This case is an action at law under the Employers' Liability Act, and under such circumstances the money received must be restored or tendered, although it is possible that in chancery cases the rule may be different. At any rate, it cannot be pretended that the following chancery suits overrule the cases cited under preceding paragraph. Morgan v. Gaiter, 202 Ala. 492, 80 South. 877; Martin v. Martin, 35 Ala. 560; Perry v. Boyd, 126 Ala. 162, 28 South. 711, 85 Am. St. Rep. 17; King v. Livingston Mfg. Co., 192 Ala. 269, 68 South. 897.

Where, as in this case, the suit is under the Employers' Liability Act, and not under the Homicide Act, and where the widow deserted the deceased nearly two years before his death, and lived all the time during such period of desertion with her parents in Cincinnati, received no support from her husband, and was not dependent on him, she cannot recover more than nominal damages for his death, where no saving is shown on the part of deceased, nor contributions made to any member of the family. Cahaba Sou.

⊜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Mining Co. v. Pratt, 146 Ala. 245, 40 South. 943; Central of Ga. v. Alexander, 144 Ala. 264, 40 South. 424; Bromley v. Birmingham Mineral R. R. Co., 95 Ala. 397, 11 South. 341; L. & N. v. Pearson, 97 Ala. 212, 12 South. 176; Seaboard Mfg. Co. v. Woodson, 98 Ala. 378, 11 South. 733; L. & N. v. Trammell, 93 Ala. 354, 9 South. 870, L. R. A. 1918C, 1062; Goen v. B. & O., 179 Ill. App. 566; Smith v. Hatcher, 102 Ga. 158, 29 S. E. 162; N. C. & St. L. v. Anderson, 134 Tenn. 666, 185 S. W. 677, L. R. A. 1918C, 1115, Ann. Cas. 1917D, 902; Burk v. Mad River R. R. Co., 125 Cal. 364, 57 Pac. 1065, 73 Am. St. Rep. 52; Moe v. Smiley, 125 Pa. 136, 17 Atl. 228, 3 L. R. A. 341; M., K. & T. v. Foreman, 174 Fed. 377, 98 C. C. A. 281; Fierro's Case, 223 Mass. 378, 111 N. E. 957; McCoullough v. Chicago R. I. & P. Ry. Co., 160 Iowa, 524, 142 N. W. 67, 47 L. R. A. (N. S.) 23; Swift & Co. v. Johnson, 138 Fed. 867, 71 C. C. A. 619, 1 L. R. A. (N. S.) 1161; Fordyce v. McCants, 51 Ark. 509, 11 S. W. 694, 4 L. R. A. 296, 14 Am. St. Rep. 69; Chicago & N. W. R. R. Co. v. Swett, 45 Ill. 197, 92 Am. Dec. 206; Quincy Coal Co. v. Hood, 77 Ill. 68; A., T. & S. F. v. Weber, 33 Kan. 543, 6 Pac. 877, 52 Am. Rep. 543; Cherokee, etc., Mining Co. v. Limb, 47 Kan. 469, 28 Pac. 181; Anderson v. C., B. & Q., 35 Neb. 95, 52 N. W. 840; 13 Cyc. p. 362; St. Louis, etc., R. R. Co. v. Garner, 76 Ark. 555, 89 S. W. 550; Hillebrand v. Standard Biscuit Co., 139 Cal. 233, 73 Pac. 163; A. G. S. v. Hall, 105 Ala. 599, 17 South. 176.

In cases under the Employers' Liability Act, pecuniary loss must be shown, and where, as in this case, no saving on the part of the deceased is shown, where there are no dependents, and no contributions made to any member of the family, and where, so far as the evidence shows, deceased spent all his earnings on himself, a verdict for substantial damages cannot stand. Cahaba Sou. Mining Co. v. Pratt, 146 Ala. 245, 40 South. 943; Central of Ga. v. Alexander, 144 Ala. 264, 40 South. 424; Reiter-Connolly Mfg. Co. v. Hamlin, 144 Ala. 192, 212, 217, 40 South. 280; Thomas Furnace Co. v. Carroll, 204 Ala. 263, 85 South. 455, 459; L. & N. v. Morris, 179 Ala. 239, 60 South. 933, 936; L. & N. v. Trammell, 93 Ala. 354, 9 South. 870; L. & N. v. Pearson, 97 Ala. 212, 12 South. 176; Bromley v. Birmingham Mineral R. R. Co., 95 Ala. 397, 11 South. 341; Southern Ry. Co. v. Vessell, 192 Ala. 440, 68 South. 336, Ann. Cas. 1917D, 892; St. Louis, etc., R. R. Co. v. Garner, 76 Ark. 555, 89 S. W. 550; McCoullough v. Chicago R. I. & P. Co., 160 Iowa, 524, 142 N. W. 67, 47 L. R. A. (N. S.) 23; Ala. Mineral v. Jones, 121 Ala. 119, 25 South. 814; A. G. S. v. Hall, 105 Ala. 599, 17 South. 176.

The father of deceased, after deceased had been abandoned by appellee, had some interest in his deceased son, at least to the extent that his appointment as administrator was not void, and such appointment could not be collaterally attacked. Code of 1907, § 2530; Childs v. Davis, 172 Ala. 266, 55 South. 540; Carr v. Illinois Central, 180 Ala. 159, 60 South. 277, 43 L. R. A. (N. S.) 634; Kling v. Connell, 105 Ala. 590, 17 South. 121, 53 Am. St. Rep. 144; Ex parte Maxwell, 37 Ala. 362, 79 Am. Dec. 62; Bozeman v. May et al., 132 Ala. 233, 31 South. 491; Broughton v. Bradley, 34 Ala. 694, 73 Am. Dec. 474; Breeding v. Breeding, 128 Ala. 412, 30 South. 881; Coltart v. Allen, 40 Ala. 155, 88 Am. Dec. 757; Barclift v. Treese, 77 Ala. 528; May v. Marks, 74 Ala. 253; Kelly v. West, 80 N. Y. 139; Simmons v. Saul, 138 U. S. 439, 11 Sup. Ct. 369, 34 L. Ed. 1054; Taylor v. Hosick, 13 Kan. 518; In re Craigie's Estate, 24 Mont. 37, 60 Pac. 495; Barclay v. Kimsey, 72 Ga. 725; Moore v. Tanner's Admrs., 5 T. B. Mon. (Ky.) 42, 17 Am. Dec. 35; Eslava v. Elliott, 5 Ala. 264, 39 Am. Dec. 326; Bromberg v. Sands, 127 Ala. 411, 30 South. 510; L. & N. v. Perkins, 152 Ala. 133, 44 South. 602.

When a party testifies on direct examination as to a future intention to return, and which testimony is opposed to her subsequent testimony, and utterly irreconcilable with her acts and conduct, such alleged intention to return becomes a "testimonial non-entity," and raises no question for submission to the jury. Hicks v. Burgess, 185 Ala. 587, 64 South. 290; Stockburger Bros. v. Aderholt, 195 Ala. 56, 70 South. 157.

The settlement with the administrator, D. B. Brown, for $500, was valid, and plaintiff's cause of action as distributee is against D. B. Brown, under section 3763, Code of 1907, and not against this appellant. Bozeman v. May, 132 Ala. 233, 31 South. 491; Childs v. Davis, 172 Ala. 266, 55 South. 540; Carr v. Illinois Central, 180 Ala. 159, 60 South. 277, 43 L. R. A. (N. S.) 634; L. & N. v. Perkins, 152 Ala. 133, 44 South. 602; Code of 1907, § 2530.

The motion for a new trial should have been granted, as the verdict was contrary to the evidence and manifestly excessive. Central of Ga. v. Alexander, 144 Ala. 264, 40 South. 424; Sloss-Sheffield Steel & Iron Co. v. Underwood, 204 Ala. 286, 85 South. 441; McCoullough v. Chicago, R. I. & P. Ry., 160 Iowa, 524, 142 N. W. 67, 47 L. R. A. (N. S.) 23; Sou. Ry. Co. v. Herron, 189 Ala. 662, 66 South. 628; Sou. Ry. Co. v. Grady, 192 Ala. 515, 68 South. 346; Hicks v. Burgess, 185 Ala. 587, 64 South. 290; Stockburger Bros. v. Aderholt, 195 Ala. 56, 70 South. 157; L. & N. v. Morris, 179 Ala. 239, 60 South. 933–936; Mower v. Shannon, 178 Ala. 469, 59 South. 568; Robinson v. Crotwell, 175 Ala. 194, 57 South. 28; Sou. Ry. Co. v. Carolina Portland Cement Co., 171 Ala. 427, 55 South. 134; Thomas Furnace Co. v. Carroll, 204 Ala. 263, 85 South. 455–459; Reiter-Connolly Mfg. Co. v. Hamlin, 144 Ala. 192, 40 South. 280; Cahaba Sou. Mining Co. v. Pratt, 146

Ala.. 245, 40 South. 943; Ala. Mineral R. R. Co. v. Jones, 121 Ala. 119, 25 South. 814; Bromley v. Birmingham Mineral R. Co., 95 Ala. 397, 11 South. 341; St. Louis, etc., R. R. Co. v. Garner, 76 Ark. 555, 89 S. W. 550; McAdory v. L. & N., 94 Ala. 272, 10 South. 507; A. G.'S. v. Hall, 105 Ala. 599, 17 South. 176.

Black & Harris, of Birmingham, for appellee.

Succeeding administrators are not liable for defaults or maladministrations of their predecessors. 1 Williams on Executors, 576 (note).

Upon a nullification of a mala fide sale, by the administrator, the fraudulent vendee is not entitled to recover back the price paid. Meyer v. Farmer, 36 La. Ann. 785; Forniquet v. Forstal, 34 Miss. 87.

Person colluding with administrator to defraud the estate acquires no rights from such effort to despoil the estate. Wetmore v. Porter, 92 N. Y. 84.

It is only in the absence of fraud or collusion that an administrator may release, compromise, or discharge claims due the estate. Waring v. Lewis, 53 Ala. 616; Logan v. Central Iron Co., 139 Ala. 548, 36 South. 729; Butler v. Gazzam, 81 Ala. 493, 1 South. 16; Philpot v. Burgham, 55 Ala. 435; Hutchinson v. Owen, 59 Ala. 326; Carr v. I. C. R. R. Co., 180 Ala. 159, 60 South. 277, 43 L. R. A. (N. S.) 634.

Succeeding administrators are not bound, affected, or prejudiced by actions of their predecessors tainted with fraud. Woolfork's Adm'r v. Sullivan, 23 Ala. 548, 58 Am. Dec. 305: Martin v. Ellerbe's Adm'r, 70 Ala. 326; Walker v. Portland Savings Bank, 113 Me. 353, 93 Atl. 1025, L. R. A. 1915E, 840, Ann. Cas. 1917E, 1.

A wrongdoer cannot improperly procure the appointment of an administrator by collusion and fraud with him, for the purpose of making an inadequate settlement of a claim against such wrongdoer, and then successfully interpose such settlement to defeat the just claim of the distributees of the estate. McLemore v. Sebree Coal Co., 121 Ky. 53, 88 S. W. 1062; McFarland's Adm'r v. L. & N. R. R. Co., 130 Ky. 172, 113 S. W. 82; Carr v. I. C. R. R., 180 Ala. 159, 60 South. 277, 43 L. R. A. (N. S.) 634.

Fraud destroys privity between administrator and his successor as to the evil transaction, and no obligations are thereby imposed on the second. It therefore follows that the wrongdoer cannot exact a payment of money from the innocent second administrator, which he did not receive. Cases cited under previous propositions.

Since the law imposes upon the husband the duty of supporting the wife, she sustains a pecuniary loss upon his death. James v. Richmond & D. R. Co., 92 Ala. 231, 9 South. 335; I. C. R. R. v. Baches, 55 Ill. 379; O'Hara

v. Lamb Const. Co., 200 Mo. App. 292, 206 S. W. 253; 163 N. C. 454, 79 S. E. 970, L. R. A. 1916E, 185; 203 Ill. App. 89; Tiffany on Wrongful Death, par. 159; Fogarty v. Northern Pac. R. R. Co., 74 Wash. 397, 133 Pac. 609, L. R. A. 1916C, 803, and note; Dallas Ry. Co. v. Spicker, 61 Tex. 427, 48 Am. Rep. 297; 8 R. C. L. 833; Ingersoll v. D. & M. Ry. Co., 163 Mich. 268, 128 N. W. 227, 32 L. R. A. (N. S.) 362.

It is sufficient to introduce evidence from which the jury may infer a reasonable expectation of pecuniary assistance or support, even though there is no evidence of actual contributions whatever; this inference may be supported by proving there are people living to whom deceased was bound by ties of affection. Pittsburgh, C., C. & St. Louis R. R. Co. v. Collard's Adm'r, 170 Ky. 239, 185 S. W. 1108, L. R. A. 1918E, 273; Dooley v. Seaboard Air Line, 163 N. C. 454, 79 S. E. 970, L. R. A. 1916E, 185; James v. Richmond R. R., 92 Ala. 231, 9 South. 335.

Where husband leaves a surviving wife, the rule of law requiring reasonable expectation of benefit to a beneficiary, does not apply. This legal liability carries with it conclusively a presumption of loss. L. & N. R. R. v. Jones, 130 Ala. 456, 30 South. 591; James v. Richmond D. R., 92 Ala. 231, 9 South. 335; Simmons v. Pacific R. R., 159 Cal. 494, 115 Pac. 320; Wood v. Philadelphia, B. & M. R. R., 1 Boyce (Del.) 336, 76 Atl. 613.

Recovery for death is never limited to nominal damages, unless the evidence shows there are no distributees. Woodstock Iron Works v. Kline, 149 Ala. 391, 43 South. 362; Tutwiler Coal Co. v. Enslen, 129 Ala. 348, 30 South. 600; James v. Richmond D. R. Co., 92 Ala. 231, 9 South. 335.

MILLER, J. Plaintiff's intestate, Albert Brown, was killed while working in the ore mine of defendant by slate falling from the roof of the mine.

This suit is brought by Cordelia Brown as administratrix of his estate against the defendant under subdivision 1 of section 3910 of the Code of 1907, known as the Employers' Liability Act. The complaint averred that the roof of the mine was defective.

The deceased, Albert Brown, left a father and mother who resided in Alabama, and his wife, Cordelia Brown, who was residing at the time of his death in Ohio with her parents, and had been there, away from her husband, for nearly two years previous to his death. The deceased left no children or their descendants. One child was born to him and his wife, but it died before Albert Brown.

Dave Brown, father of Albert Brown, 19 or 20 days after Albert Brown's death, was appointed administrator of his estate by the probate court of Etowah county, Ala. On the same day of his appointment the defendant paid him as administrator $500 in full

settlement of the claim against defendant growing out of the death of Albert Brown, and he signed a written release in his individual name; but the release recited it was paid to him as administrator of the estate of Albert Brown, deceased.

Cordelia Brown, wife of deceased, made application on August 12, 1919, to the probate court of Etowah county, Ala., for letters of administration on his estate; and on August 20, 1919, made application to remove Dave Brown as administrator, and to appoint her administratrix of said estate. The probate judge of said county revoked and annulled the letters of administration issued to Dave Brown on September 11, 1919, and appointed her as administratrix on September 18, 1919.

The defendant pleaded the general issue and many special pleas, to only two of which the attention of this court is called. The special pleas 6 and 12 set up that before this suit was commenced the defendant settled and compromised the cause of action attempted to be set up in this complaint with Dave Brown, the then duly appointed, qualified, and acting administrator of said estate.

The plaintiff files two replications to each of said special pleas. Each replication sets up fraud between defendant and Dave Brown, as administrator, in said settlement, and sets up facts constituting the alleged fraud, and each replication also avers:

"That she has not received from said D. B. (Dave) Brown the sum of $500, nor any part thereof, nor has she at any time or in any way whatsoever ratified the said settlement, and that she has constantly opposed the settlement for such a grossly inadequate amount, and that she is now opposing such alleged settlement."

The defendant demurs to each of the replications on the following, and many other grounds: The replication does not aver that plaintiff, or any one for her, has ever tendered to defendant said $500, or any part of it; "there is no averment that the defendant has been placed in statu quo;" and there is no averment that plaintiff or any one for her has ever offered to put the defendant in statu quo.

The plaintiff can affirm or disaffirm the contract, if fraudulent. If plaintiff disaffirms, it must be done as early as practicable after discovery of the fraud. This court has established this rule:

"The person who would disaffirm a fraudulent contract must return whatever he has received under it. This is on a plain and just principle. He cannot hold on to such part of the contract as may be desirable on his part and avoid the residue, but must rescind in toto, if at all. * * * This rule prevails in courts of law as well as equity." B. R., L. & P. Co. v. Jordan, 170 Ala. 530, 54 South. 280; Stephenson v. Allison, 123 Ala. 439, 26 South. 290; Harrison v. Ala. Mid. R. R. Co., 144 Ala. 256, 40 South. 394, 6 Ann. Cas. 804.

The plaintiff by these replications seeks to disaffirm on the ground of alleged fraud in the contract made and release given by Dave Brown as administrator of this estate to defendant for $500; but plaintiff fails to aver that the $500 has been returned or offered or tendered to defendant, or that she has returned to defendant what the estate received under the release. She avers in her replication:

"That she has not received from said D. B. Brown the sum of $500, nor any part thereof, nor has she at any time or in any way whatsoever ratified the said settlement."

Is this a sufficient averment to answer the rule of law that the estate of deceased must return whatever it has received under it—the alleged fraudulent contract or release—before it can disaffirm the contract and maintain the suit for the same alleged cause of action?

Dave Brown, the father of deceased, within 40 days after decedent's death, applied for and obtained letters of administration on his son's estate. The widow, under section 2520, had the first right, and Dave Brown the second right. The widow within the 40 days applied to the court and had letters of administration revoked to Dave Brown, and granted to her, as the law allowed, she not having waived her right thereto. Section 2522, Code 1907.

The issuance of letters of administration to Dave Brown was not void, but voidable. The widow by seasonable application within 40 days after the death of Albert Brown had the right to have letters of administration revoked and to be appointed administratrix of the estate, she being competent to serve. Childs v. Davis, 172 Ala. 266, 55 South. 540; sections 2520, 2522, and 2530, Code 1907; Carr v. Ill. Cent. R. Co., 180 Ala. 159, 60 South. 277, 43 L. R. A. (N. S.) 634.

"Letters * * * of administration * * * granted by any court having jurisdiction are conclusive evidence of the authority of the person to whom the same are granted, from the date thereof until the same are revoked; and when granted, such letters * * * extend to all the property of the deceased in the state." Section 2530, Code 1907; Johnson v. Kyser, 127 Ala. 309, 27 South. 784; Garrett v. Harrison, 201 Ala. 186, 77 South. 712; Kling v. Connell, 105 Ala. 590, 17 South. 121, 53 Am. St. Rep. 144; Barclift v. Treece, 77 Ala. 528.

One replication to said pleas avers that the bond of the administrator, Dave Brown, was approved with only one surety, and the law requires two. While the statute requires the bond to be signed by at least two sufficient sureties or a sufficient guaranty or surety company, still, if only one individual surety signs the bond, this is an irregularity that does not render the appointment of the administrator void. The bond is binding on the

one surety and principal. Steele v. Tutwiler, 68 Ala. 107; Cunningham v. Thomas, 59 Ala. 158; Ex parte Maxwell, 37 Ala. 362, 79 Am. Dec. 62; section 2540, Code 1907.

These replications to pleas 6 and 12 do not question the jurisdictional right of the probate court of Etowah county to grant the letters of administration on the estate of Albert Brown, deceased. The court granted the letters to Dave Brown within 40 days after the death of the intestate: this was voidable, and not void. The defendant paid this administrator Dave Brown before his letters were revoked $500, in full settlement and release of matters involved in this suit.

When the letters of administration of Dave Brown were revoked by the court, it was his duty "on demand to deliver to the rightful administrator," the plaintiff in this case, "all the assets of the deceased which may be in his hands, and render an account on oath of all his proceedings to the probate court." Section 2529, Code 1907. After Dave Brown was removed and his letters of administration revoked, he "must within one month after his authority ceases" file his accounts, vouchers, and statement of heirs and legatees for, and must make final settlement of, his administration of the estate. Section 2692, Code 1907. The succeeding administratrix of the estate of Albert Brown, the plaintiff. in this suit, must be made a party to such settlement. Section 2693, Code 1907.

If there remains any act of administration to be done, other than making the settlement and distribution, and there is a succeeding administratrix, as in this case, a decree must be rendered in her favor for the amount found due on such settlement. Section 2694, Code 1907. If Dave Brown, after being removed as administrator of said estate, fails to make settlement within the time required by law, "the court may, on its own motion, or on application of any party in interest, compel him to do so by attachment." The plaintiff in this suit on proper application to the probate court of Etowah county could have the court compel Dave Brown to settle his administration of the estate. Section 2697, Code 1907.

The $500 damages paid Dave Brown as administrator was not subject to payment of debts or liabilities of the estate, but should be distributed according to the statute of distribution. Section 3912, Code 1907. The widow, Cordelia Brown, the administratrix, is the only distributee of personal property of the estate of Albert Brown, her husband, there being no children. Section 3763, Code 1907. On settlement of Dave Brown's administration of the estate of Albert Brown, deceased, the $500 paid him by defendant should be delivered to plaintiff, Cordelia Brown, as administratrix, or individually; she has the right, and it is her duty under the law, to compel him (Dave Brown) to settle. This $500, if she disaffirms the settlement, should be returned to or tendered defendant. Under the statute, when death results from the injury, the administrator only can sue. Section 3912, Code 1907; Ex parte L. & N. R. Co., 124 Ala. 547, 27 South. 239.

The plaintiff, desiring to disaffirm this settlement of the former administrator on the ground of fraud and insufficiency of amount paid, should have demanded the $500 of Dave Brown as administrator, and, if he gave it to her, then she should have delivered it or tendered it to the defendant. If she demanded it, and he refused to give it to her, or if he and the surety on his bond were insolvent, and it could not be made out of them by the exercise of due diligence, or for some other good cause she could not secure the $500 for defendant, on account of defendant knowingly paying it to an insolvent administrator with an insolvent bond, with fraudulent intent, if true, then the replications should set up such facts, showing the $500 was paid to defendant or tendered to defendant before suit was filed, or aver facts setting up sufficient legal excuse for failing to do so. Plaintiff avers she has not received the $500 nor any part of it. The facts averred in the replications are not sufficient.

The settlement averred in the pleas is rejected, disaffirmed, by the replications on the ground of fraud, and the amount paid being insufficient. The replications aver no facts showing a return of the $500 to defendant. They aver no facts showing efforts to secure it in order to return it to defendant, and failure due to wrong of defendant in knowingly paying the $500 to an insolvent administrator, with insolvent surety on his bond, with fraudulent intent to injure the legal distributee, if true. The replications aver no facts showing legal excuse for not collecting from the former administrator the $500 paid him in settlement of the claim and returning or offering it to the defendant.

To hold otherwise would permit this administratrix to settle the claim with defendant, resign or be removed, and let another be appointed. Then a new suit could be filed. When the defendant pleaded to it settlement with the former administratrix, the plaintiff could reply and aver fraud in the settlement, and that "he has not received the money or any part thereof." In this way the defendant could be continually vexed and jeopardized with trials, and these removals and resignations of administrators after settlements be continued and new suits begun for the same cause of action · indefinitely. The power and authority to collect the $500 from the preceding administrator is given by law to this administratrix as such, or to her individually. She should exercise that power and authority, collect it,

and return or offer it to the defendant or aver and show a legal excuse for failing to do so. The said demurrers to each replication should have been sustained on the grounds hereinbefore mentioned. Birmingham R., L. & P. Co. v. Jordan, 170 Ala. 530, 54 South. 280; Stephenson v. Allison, 123 Ala. 439, 26 South. 290; Harrison v. Ala. Mid. R. Co., 144 Ala. 256, 40 South. 394, 6 Ann. Cas. 804; Ex parte Marler, 204 Ala. 342, 86 South. 108; U. S. Cast I. & F. Co. v. Marler, 17 Ala. App. 358, 86 South. 103; Rabitte v. Ala. G. S. R. Co., 158 Ala. 431, 47 South. 573.

"The damages recovered are not subject to the payment of debts or liabilities, but shall be distributed according to the statute of distributions." Section 3912, Code 1907.

The deceased left a widow and no children. His father and mother are still living. The widow, there being no children, is entitled to all the personal estate. Section 3763, Code 1907. Divorce bars the wife of her dower and of any distributive share in the personal estate of her husband. Section 3816. Hence those charges directing verdict for nominal damages if the jury believed she, the widow, abandoned the deceased, with no intention of returning and without support from him during the time, were properly refused by the court. There was no evidence that they were divorced. Sections 3816 and 3912, Code 1907.

The evidence was in conflict on the question of fraud and conspiracy. From the evidence it was for the jury to say whether Dave Brown as administrator signed the release for $500 in full settlement of the cause of action bona fide or not with the defendant. There was evidence tending to prove the replications of the plaintiff to pleas 6 and 12. These replications charged fraud and conspiracy. This question was properly left to the jury. The charges taking it from them were properly refused. These charges are set out in assignments of error numbered 6, 7, 8, 9, 10, 12, 13, 14, 15, 16, 17, 20, 21, and 22.

The evidence shows that O. R. Hood was one of the attorneys for the defendant; that he was present in the probate court when Cordelia Brown was seeking to have the court set aside and revoke the letters of administration issued to D. B. Brown on the estate of Albert Brown, and to appoint her administratrix of the estate. The evidence showed he was there representing the defendant in that proceeding. The defendant was not a party to that proceeding. Its attorney appeared as amicus curiæ; then stated:

"I am not going to make any bones about it. I am here to protect the interest of the Alabama Company."

It was not proper to allow the testimony as to what the defendant's attorney said and did in that proceeding. It does not tend to show fraud.

The appointment of D. B. Brown, the father of the deceased, as administrator of the estate of Albert Brown by the probate court of Etowah county, within 40 days after his death—the deceased leaving a widow—was voidable, and not void. Childs v. Davis, 172 Ala. 266, 55 South. 540; sections 2520 and 2522, Code 1907; Garrett v. Harrison, 201 Ala. 186, 77 South. 712. Hence the following charges state correct propositions of law, but in their proper application to the issues in this cause needed amplification in order to avoid some tendency to mislead:

"If you believe the evidence, the appointment by the probate court of Etowah county of D. B. Brown, as administrator of the estate of Albert Brown, deceased, was voidable, and not void.

"If you believe from the evidence that the father of Albert Brown was appointed administrator of the estate of said Albert Brown 18 days or 20 days after the death of said Albert Brown, then I charge you that the probate court of Etowah county had authority to make such appointment."

The evidence shows that Albert Brown, the deceased, was getting $3.50 per day at the time of his death. His age from the testimony at that time was from 20 to 26 years. His health was good. The evidence tended to show he worked regularly. He married Cordelia Brown in 1916. They had one child. It is dead. His wife was living in Cincinnati with her father and mother at the time of his death. She went there November 15, 1917. He was killed July 23, 1919. His wife testified that she went to Cincinnati because her husband thought he would have to go to the army.

"He told me to go up there and stay and he would come. Up to the time I left he had been supporting me and my child. I consumed about all he made at that time. I think he made $2.20 at that time. I got all of it outside of what I paid for house rent and grocery bill. I corresponded with him after I left. He did not send me any money while I was up there. I intended to come back to him. He was in good health. He worked regularly. I was afraid that Albert would go to the army. He did not ask me to keep him from going. * * * I signed his questionnaire papers, and sent them back from Cincinnati to the local board at Gadsden, Ala. I knew where he was staying. I found out then he had not gone to the army. He did not ask me to come back. I did not go up there to come back. I thought he would come up there; he said he would. I made no arrangements to come back at any time."

The deceased, from the evidence, supported in 1917 the wife, child, and himself on $2.20 per day. He was earning $3.50 per day when killed. From the evidence the jury could infer that he and his wife would have continued to live together if he had not.

been killed; that his wages were probably sufficient to support her and him with some surplus. This being true, all charges asked by defendant and refused by the court directing verdict for nominal damages only, if the jury believed from the evidence that the plaintiff was entitled to recover, were free from error.

As the case has to be reversed, it is not necessary for us to decide whether the damages assessed by the jury were excessive or not, under the evidence before us. James v. Richmond & D. R. Co., 92 Ala. 231, 9 South. 335; L. & N. R. Co. v. Fleming, 194 Ala. 58, 69 South. 125; L. & N. R. Co. v. Trammell, 93 Ala. 350, 9 South. 870; Reiter-Connolly Mfg. Co. v. Hamlin, Adm'r, 144 Ala. 192, 40 South. 280.

Reversed and remanded.

ANDERSON, C. J., and McCLELLAN, SOMERVILLE, and THOMAS, JJ., concur.

SAYRE, J. (dissenting). [1] We are not satisfied with either the result in this case or the process by which it is reached. In view of the allegation of fraud made against the first administrator and expressions by this court in Martin v. Ellerbe's Adm'r, 70 Ala. 326, and other cases cited on the brief for appellee, we are not inclined to treat the argument against appellee's replication with much favor. But, aside from such general consideration, appellee should not be charged with the duty of returning to appellant the sum of money which appellant gave to appellee's predecessor in the administration as part and parcel of their mutual scheme—as the replication alleges—to defraud the widow of deceased, for whose benefit this action is maintained, nor do the authorities cited to the prevailing opinion hold to any such view. The identity of appellee as administrator de bonis non, so called, with his predecessor who took part in the fraudulent compromise and settlement alleged is not an identity in fact: the fiction of identity is indulged to advance the ends of justice and for no other purpose or end. Damages recoverable in this case are assets of the estate of deceased for a limited purpose only. They are assets for the purpose of distribution only; they are not subject to the payment of debts or liabilities of the decedent; the administrator has no duty in respect of them except to hand them over to the persons entitled thereto according to the statute of distributions; neither the personal representative nor creditors have any claim, right, or title to any part or interest in the damages. Code, § 2486; Griswold v. Griswold, 111 Ala. 573, 20 South. 437; Kennedy v. Davis, 171 Ala. 609, 55 South. 104, Ann. Cas. 1913B, 225. Now section 2694 of the Code provides that such assets—that is, assets as to which no act of administration, other than distribution, remains to be done—shall be paid directly to those entitled without passing through the hands of the remaining or succeeding administrator. Why, then, this identification of appellee with his predecessor in the administration or why drive him to the futility of a demand upon or suit against his predecessor? It cannot be expected that his predecessor will by acceding to the demand acknowledge his part in the fraud or answer for a fund which needs not pass through the hands of the appellant. Indeed, this court held in Garrett v. Harrison, 201 Ala. 186, 77 South. 712, that, where a party invoked the court to compel a fraudulent administrator to pay into court a fund the product of fraud and collusion, he thereby ratified the settlement in which the fraud and collusion was practiced. Cases cited in the prevailing opinion hold nothing to the contrary of the view here presented. They hold only that the party who would disaffirm a fraudulent contract must return what he has received under it. Neither the appellee nor the widow of decedent, for whose benefit he sues, has received anything in the case at bar.

We dissent.

SOMERVILLE and GARDNER, JJ., concur.

. On Rehearing.

Application overruled.

ANDERSON, C. J., and McCLELLAN, THOMAS, and MILLER, JJ., concur.

SAYRE, SOMERVILLE, and GARDNER, JJ., dissent.

On Application for Rehearing.

MILLER, J. The original opinion, approved by a majority of this court at its first reading, on application of plaintiff for rehearing brought forth a dissenting opinion by the minority of the court.

. [2] It is now on its second rehearing by application of a member of this court. This is permissible and proper. On this second rehearing the original majority opinion becomes the dissenting minority opinion, and the minority dissenting opinion becomes the opinion of the court by a majority. Justices SAYRE, SOMERVILLE, GARDNER, and THOMAS dissent from the original opinion in its entirety, and hold that there is no reversible error in the rulings of the trial court as expressed therein. The former order reversing the case is therefore set aside by them.

In the present majority and former minority opinion, Justice SAYRE, speaking for the court, says:

"Indeed, this court held in Garrett v. Harrison, 201 Ala. 186, 77 South. 712, that, where a party invoked the court to compel a fraudulent administrator to pay into court a fund the

product of fraud and collusion, he thereby ratified the settlement in which the fraud and collusion was practiced."

We do not think the opinion of the court will support the above interpretation. The facts and opinion appear different to us. That case is not on a parallel with this case. It does not support it. In that case the administrator settled a death claim; and the distributee filed petition to have him removed. This court in its opinion in that case wrote:

"The allegation, otherwise in appellant's petition, that Harrison effected the settlement before his appointment as administrator, and that the settlement was the product of collusion or fraud, cannot avail this petitioner; since the petition of the appellant as well as the sworn claim filed by the appellant both manifest a ratification of that settlement by claiming the amount thereof and by invoking the court to compel Harrison to pay that sum into the court. The record discloses that Harrison executed, with presumably adequate security, an administrator's bond in the sum of $2,000. There is no reason disclosed to anticipate the failure of the approximately $1,000 to reach the hands of those to whom, under the law, it should go."

In that case the widow, the distributee, was seeking the money from the alleged fraudulent settlement of death claim not to be returned to the defendant, but to prevent the administrator from keeping it personally and to appropriate it to her use. This being manifested by her "in the petition" and "in the sworn claim filed," she thereby, of course, ratified the settlement.

Here in the present case, when the deceased was killed, the widow was residing in Ohio; the deceased was residing in Alabama. The father of the deceased was appointed administrator and settled the claim with the defendant for $500 cash. Within the time allowed for the widow to apply for and obtain letters of administration, the father was removed and the widow was appointed administratrix. There was only one Albert Brown. He was killed. There was only one estate. It was Albert Brown's estate. There could be only one representative of his estate. His father as such, the first representative, settled the death claim with the defendant for $500. It has never been returned to defendant. He [the father] was removed from the administration. The widow, the distributee, was appointed the second administratrix. She made no effort to secure the $500 and return it to defendant, but filed suit for damages for the same cause of action, the death of Albert Brown, and the jury gave her as administratrix $500.

"The person who would disaffirm a fraudulent contract must return whatever he has received under it." B. R., L. & P. Co. v. Jordan, 170 Ala. 530, 54 South. 280.

The estate of Albert Brown received through his father, as administrator, $500 from defendant for the distributee for the death claim. The estate of Albert Brown through his widow, as administratrix, disaffirms that alleged fraudulent settlement, does not return it, makes no effort to return it, gives no legal excuse for not returning it except she did not receive it, and the estate gets judgment for $5,000 more for distribution to the distributee.

Albert Brown, if living, could not disaffirm an alleged fraudulent contract of settlement for his injuries without first returning whatever he has received under it; and the estate of Albert Brown should return what it has received through its representative under the contract from the defendant for the distributee before the estate should be permitted to disaffirm the alleged fraudulent contract made with its representative and obtain another amount by suit from the defendant for the distributee or aver a legal excuse for not doing so.

ANDERSON, C. J., and McCLELLAN, J., concur in the foregoing opinion. Justices SAYRE, SOMERVILLE, GARDNER, and THOMAS, a majority of the court, express the views of the court in another opinion on that subject.

[3] In the original opinion, whether the damages assessed by the jury were excessive, as claimed on motion for new trial, was left an open question, as the case by it was reversed. Now, as it is affirmed by the court, it is necessary for that question to be answered. The rule to fix and measure the compensatory damages in cases of this kind has been frequently declared by this court. It can be found in the following cases: L. & N. R. Co. v. Trammell, 93 Ala. 350, 9 South. 870, and L. & N. R. Co. v. Orr, 91 Ala. 548, 8 South. 360. The damage recoverable is never nominal in an action like this, unless there are no distributees. In the case of Woodstock Iron Wks. v. Kline, 149 Ala. 401, 43 South. 365, this court said:

"In this case it does not appear that there were no distributees of deceased's estate, to whose benefit the money would inure. It is only in such case that the recovery is held to be limited to nominal damages. James v. R. & D. R. R. Co., 92 Ala. 231, 9 South. 335; T. C. C. I. Co. v. Enslen, 129 Ala. 348, 30 South. 600. Here it was shown that deceased had a father who survived him, and it was not shown, or attempted to be shown, that he left no other distributees. His earning capacity, his age, probable duration of life, habits of industry as were shown, business, etc., furnishes proper data from which a pecuniary compensation might be fixed by the jury. L. & N. R. R. Co. v. Orr. 91 Ala. 548, 8 South. 360; James v. R. & D. R. R. Co., 92 Ala. 231, 9 South. 335; McAdory v. L. & N. R. R. Co., 94 Ala. 272, 10 South. 507; Tutwiler Coal, Coke & Iron Co. v. Enslen, 129 Ala. 348, 30 South. 600."

[4] The administratrix, the plaintiff personally, is the only distributee of the deceased. She is his widow. There are no lineal descendants. They were married in 1916. They lived together less than 2 years. Her parents went to Ohio. His parents lived in Alabama. She left him and went to live with her parents in Ohio in November, 1917. He continued to live in Alabama. She remained in Ohio until after his death. She never saw him again after she went to Ohio. He contributed nothing to her support after she went to Ohio. For nearly 2 years before his death he did not give her one cent. His income was $3.50 per day wages at the time of his death. His health was good, his age 26, and he left no estate. The wages were spent on himself. There is no evidence as to his assisting any one after his wife went to her parents. She never came to see him and he never went to see her after their respective residences were located in different states. She lived in Ohio, and he lived in Alabama from November, 1917, to July, 1919, the time of his death. Within 30 days after he was killed she returned to Alabama. Before she left for Ohio, his wages were $2.20 per day. Out of it he supported himself, his wife, and their child. They consumed all of it. She testified that they had not separated, that she wrote to him, and that she intended to come back to him.

The jury might infer and believe from this testimony that she might have returned to him or he might have gone to her, and that he might have supported her from his wages, if he had not been killed.

[5] The jury by their verdict fixed her compensation as a dependent on her husband, Albert Brown, and her expectation from the distribution of his estate at $5,000. This, under all the evidence in this case and the rule fixed for its determination, is excessive. Proceeding, in the absence of other reversible error, to assess the just and proper amount of recovery in this cause, as required by the act of September 17, 1915 (Acts, p. 610), the court fixes upon the sum of $2,500, and doth order that the judgment in this cause be reversed and remanded unless plaintiff within 20 days from the date hereof remit all damages in excess of said amount, in which event the judgment will be affirmed.

Application granted, original judgment of reversal set aside, and judgment reversed conditionally.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur in the foregoing opinion on damages.

McCLELLAN, SOMERVILLE, and THOMAS, JJ., dissent.

THOMAS, J. (concurring with Justices SAYRE, SOMERVILLE, and GARDNER, as indicated infra). On the original hearing the opinion of the majority was grounded on the principle of rescission stated generally in U. S. Cast I. P. & F. Co. v. Marler, 204 Ala. 342, 86 South. 108; B. R., L. & P. Co. v. Jordan, 170 Ala. 530, 54 South. 280; Rabitte v. A. G. S. R. Co., 158 Ala. 431, 47 South. 573; Harrison v. Alabama Midland R. Co., 144 Ala. 246, 40 South. 394, 6 Ann. Cas. 804; Stephenson v. Allison, 123 Ala. 439, 26 South. 290. An examination of these authorities discloses a rescission between the original parties to the contract or release alleged to have been procured by fraud.

In U. S. Cast I. P. & F. Co. v. Marler, supra, an injured employé had been induced by fraud to sign a release for a consideration; and in B. R., L. & P. Co. v. Jordan, supra, the suit was by a passenger for injuries received in transportation. There were pleas of accord and satisfaction, to which was the reply that the release signed was materially misrepresented by the person acting on behalf of defendant in procuring plaintiff's signature thereto. Held, that such a one who would disaffirm a fraudulent contract must return whatever has been received under it, and the rule prevails in courts of law as well as equity, etc. Such was the case in Rabitte v. A. G. S. R. Co., supra.

The suit in Harrison v. Alabama Midland R. Co., supra, was for damages for personal injuries sustained in a wreck of a passenger train while in defendant's employ and by reason of alleged defects in the ways, works, etc., of defendant. Defendant's pleas as amended averred a compromise and settlement with plaintiff for his damage for the amount stated in the release exhibited. Replications to such special pleas were challenged by demurrer that was sustained on the ground that it is not denied in the replication that plaintiff knew, some time after he signed the release, what the provisions were; and there is no averment that he returned or offered to return the sum alleged to have been paid, etc. Held, without error. Excerpts from Stephenson v. Allison, supra, that were quoted with approval were to the effect that, if the party defrauded would disaffirm the contract, he must do so at the earliest moment after discovery of the fraud, and "must return whatever he has received from it." The Stephenson Case was a bill for rescission and cancellation (on ground of fraud as to its consideration) of a mortgage executed by complainant to respondent.

The foregoing decisions are rested on Dill v. Camp, 22 Ala. 249; Barnett v. Stanton, 2 Ala. 181, 195; Masson v. Bovet, 1 Denio (N. Y.) 69, 43 Am. Dec. 651, and notes. The Dill-Camp Case was an action of assumpsit on a written contract for the hire of slaves for a sum in gross of $125.50 by the payee therein. The contract price was sought to be avoided or abated by the maker of the note

for the reason that the slaves did not efficiently discharge the service for which they were employed. Under such pleading was discussed the law of rescission and placing of the other party in statu quo, if possible. The Barnett-Stanton Case was a suit on promissory notes for the purchase of ready-made clothing by the payee against the maker. No pleas are disclosed, and the case was tried by the jury "as on issue joined." There was testimony that the pieces of clothing did not correspond with the marks on them; the disagreement being such as to amount to a fraud on the purchaser. The Chief Justice discussed the nature of contracts for the sale of personal chattel where procured by fraud and the duty of the party rescinding (1) where circumstances have been altered by a past execution, and (2) where the parties can be put in statu quo. The cases of King v. Livingston Mfg. Co., 192 Ala. 269, 68 South. 897, and Consumers' C. & F. Co. v. Yarbrough, 194 Ala. 482, 69 South. 897, were in equity; and that of Lowe v. Shinault, 201 Ala. 593, 79 South. 22, was at law. Each of the foregoing cases was that of rescission between the original parties to the contract or written release.

In the Masson-Bovet Case, supra, reported in 1 Denio (N. Y.) 69, 43 Am. Dec. 651, a party had been induced to part with property on a fraudulent contract. There was rescission and an effort to recover his property on discovering the fraud by an appropriate and seasonable action. It was declared that the election of the party to rescind a contract for fraud must be exercised at the earliest practicable moment after discovering the fraud; and the party rescinding must return what he has received on it, or offer to do so; but, if the nature of the transaction is such as the status quo cannot be restored, the party rescinding is not required to put the other party in the same situation in which he was before the contract. The justice said:

"A person who is induced to part with his property on a fraudulent contract may, on discovering the fraud, avoid the contract and claim a return of what has been advanced upon it. Fraud destroys the contract ab initio, and the fraudulent purchaser has no title: Chit. on Con. 406, 678–681, Am. Ed. of 1842. * * * The party who would disaffirm a fraudulent contract must return whatever he has received upon it. This is on a plain and just principle. He cannot hold on to such part of the contract as may be desirable on his part, and avoid the residue, but must rescind in toto, if at all.

Other Alabama decisions cited are Beatty v. Palmer, 196 Ala. 67, 71 South. 422, where there was discussion of a timely rescission of the contract of release for mental disability after discovery of the alleged settlement and tender of the amount paid defendant at the time of the execution of the release. So of Kelly v. L. & N. R. Co., 154 Ala. 573, 45 South. 906, and Wright v. Waller, 127 Ala. 557, 29 South. 57, 54 L. R. A. 440, avoidance of contracts or releases because of incapacity by drunkenness, etc. In Jones v. Anderson, 82 Ala. 302, 2 South. 911, the suit was statutory detinue for oxen, etc., after breach or nonperformance of contract touching the possession. The court declared that on a sale of personal property procured by fraud the defrauded party may rescind within a reasonable time after the discovery of the fraud; that vendor could not rescind and retake the property sold without returning or offering to return the purchaser's written obligation for the price.

With this understanding of the foregoing authorities, I am of opinion that they are not decisive of the question presented by the overruling of demurrers to plaintiff's replications. The charge, to which there are amended replications, was twofold: (1) The fraudulent procurement of the letters of administration by and to Brown by and with defendant's agents charged to have had a full knowledge of plaintiff's rights in the premises as the wife of decedent, and the issue of which letters was for the purpose of defrauding plaintiff as distributee; and (2) the fraudulent settlement by defendant with said Brown as administrator as affecting and defeating plaintiff's said rights as distributee, which were well known to defendant's agent acting for it in the matter of the payment of the $500 to Brown as administrator, etc. Of this it is averred in the replication as amended that:

"The sum paid D. B. Brown for the fraudulent release pleaded by the defendant was grossly inadequate and for an amount which does not even proximately reasonably compensate the estate of the said Albert Brown for his said wrongful death, as alleged in the complaint, and * * * that the settlement of said cause for such grossly inadequate amount with the said D. B. Brown was the result sought to be attained by the said servant and agent of the defendant as before alleged in the perpetration of the scheme as a part of which the said D. B. Brown was appointed administrator by the false representations hereinbefore set out; * * * that she has not received from the said D. B. Brown the sum of $500, nor any part thereof, nor has she at any time in any way whatsoever ratified the said settlement; and that she has constantly opposed the settlement for such a grossly inadequate amount, and that she is now opposing such alleged settlement."

The fraud charged to defendant's agents, having full knowledge of plaintiff's right in the premises, from and before the grant of first letters to the written release by first administrator of plaintiff's damage, is different from that charged in the several replications or pleadings on which was rested the foregoing decisions. Under the facts averred in

said replications supporting the complaint, and in answer to pleas of accord and satisfaction with Brown as administrator, etc., desiring to disaffirm such settlement on the grounds of "fraud and insufficiency of amount," the plaintiff was not required to do more than take appropriate and timely action of disaffirmance in the probate court (which was done within 40 days of the death of decedent), looking to the revocation of the letters of administration to Brown and the issuance of same to her, and, after her appointment as such personal representative, duly prosecuted her claims to judgment in her representative capacity for her benefit as an individual clothed with the statutory right of distributee. If she had demanded the $500 of Dave Brown, or proceeded by appropriate action to compel its payment by him as administrator or by his surety, such action would have been a ratification of the fraud pleaded—procurement of letters in the first instance and of the settlement with defendant. Garrett v. Harrison, 201 Ala. 186, 77 South. 712.

Under the facts averred in her replications as amended, plaintiff was not required to return the $500 paid by defendant to Brown as administrator, or to make a due tender of such sum before maintenance of her suit to judgment. And the facts as averred are sufficient answer to defendant's pleas.

There are authorities supporting the insistence of appellee's counsel that succeeding personal representatives (administrators) are not bound or prejudiced by the acts of their predecessors in representative capacity when such acts are tainted with fraud. Waring v. Lewis, 53 Ala. 615, 628; Masterson v. Pullen, 62 Ala. 145, 153; Martin v. Ellerbe's Adm'r, 70 Ala. 326, 340; Butler v. Gazzam, 81 Ala. 491, 1 South. 16; Logan, Adm'r, v. Central I. & C. Co., 139 Ala. 548, 556, 36 South. 729; Carr v. Illinois Central R. Co., 180 Ala. 159, 165, 60 South. 277, 43 L. R. A. (N. S.) 634; Bishop v. Big Sandy Lbr. Co., 199 Ala. 463, 74 South. 931.

On further consideration of the record, the respective briefs of counsel, and the reasons stated by Mr. Justice Sayre, I am in accord with the view he expresses that there was no error in overruling demurrer to said replications.

The complaint on which the trial was had, consisting of one count under the first subdivision of section 3910 of the Code of 1907, alleged that plaintiff's intestate was killed while at work for defendant, by reason of a defective roof in a mine.

Appellee's counsel argues that, according to the American tables of mortality, if the life of said intestate had been computed on the basis of one-half of his earning capacity, it would have been worth to his widow a larger sum than that awarded by the jury. Does the evidence disclose material facts on which a jury may base such finding? In an action under this statute by an administrator for damages caused by the wrongful death of an employé, the damages recoverable are compensatory. In such case the rule of admeasurement has been stated to be that which gives such a sum as, being put to interest at the rate of 8 per cent. per annum, will each year, by taking a part of the principal and adding it to that interest, yield the amount of deceased's yearly contribution to his family or dependent, less his personal expenses, so that the whole remaining principal at the end of deceased's expectancy of life, added to the interest on this balance of the principal for the year, will equal the amount of his yearly contribution to his family or dependent. Reiter-Connolly Mfg. Co. v. Hamlin, 144 Ala. 192, 40 South. 280; Thomas Furnace Co. v. Carroll, 204 Ala. 263, 267, 85 South. 455; L. & N. v. Orr, 91 Ala. 548, 553, 8 South. 360; James v. Richmond & Danville R. Co., 92 Ala. 231, 236, 9 South. 335; L. & N. v. Fleming, 194 Ala. 51, 58, 69 South. 125; L. & N. v. Porter, 205 Ala. 131, 87 South. 288, 293.

Though there is a locus pœnitentiæ within the statutory period of two years for the husband or wife at fault in voluntary abandonment of the other (Pentecost v. Pentecost, 204 Ala. 152, 85 South. 374), the question for decision, however, is not alone one of abandonment or repentence within two years of abandonment vel non (Brown v. Brown, 204 Ala. 157, 85 South. 439), but is also that of contribution on the part of the husband to the wife or dependent, and of accumulation pursuant to the rule announced by this court. A careful examination of the record fails to disclose the facts necessary on which to justify a verdict of $5,000. The evidence shows that for nearly two years (from November 15, 1917, to July 28, 1919) preceding his death decedent spent all his earnings on himself and did not contribute anything to the wife during the period of her residence with her parents in Cincinnati, Ohio. Though the evidence shows him to have been about 26 years of age, in good health, working regularly, earning $2.20 per day when the wife went away, and that he spent it on his family, and earning $3.50 at the time of his death, yet it does not sufficiently show his yearly earnings and savings at the time of his death or immediately preceding, or that he made contribution to the wife or dependent after she had left the state; that is to say, the evidence fails sufficiently to disclose his habits of economy, net income, or contribution to the support of his wife immediately preceding his death or within a reasonable period antedating the same as required by the unbroken rule of this court. James v. Richmond & Danville, supra; McAdory v. L. & N. R. Co., 94 Ala. 272, 276, 10 South. 507.

Nor is this supplied in the instant case by the presumption of dependency. Under some circumstances the presumption of dependency and of pecuniary loss to a relation or dependent may arise (L. R. A. 1918C, 1062) from the duty of the husband and father (generally) to support his wife and children. When financial ability, habit of industry, and economy are shown, ordinarily the law presumes that this duty "is discharged until overcome by evidence." Malott v. Shimer, 153 Ind. 35, 54 N. E. 101, 74 Am. St. Rep. 278. If such presumption is not rebutted, there may be a case in which it would be sufficiently strong to sustain a verdict for more than a nominal amount. When, however, a wife leaves and remains away from the domicile of her husband, becoming wholly dependent upon others in another state for the period of about two years, is not dependent on the husband, and receives no support from him for that time, and no saving or contribution is shown, the deceased husband having spent all of his earnings on himself, the "presumptive benefit from his continued existence" is rebutted; that is to say, when the evidence is sufficient to overcome the presumption of dependency which arises from relationship, the presumption of pecuniary loss passes. Bromley v. B. M. R. Co., 95 Ala. 397, 406, 11 South. 341; A. M. R. R. Co. v. Jones, 114 Ala. 519, 533, 21 South. 507, 62 Am. St. Rep. 121; Cahaba, etc., Co. v. Pratt, Adm'r, 146 Ala. 245, 40 South. 943. The rule fails when the reason therefor ceases. Hodge v. Joy (Ala. Sup.) 92 South. 171;[1] L. & N. v. Abernathy, 197 Ala. 512, 73 South. 103; Bank v. Planett's Adm'r, 37 Ala. 222, 226; Bell v. Reynolds, 78 Ala. 511, 513, 56 Am. Rep. 52.

Though the plaintiff as a witness testified to the fact that she intended to return to her husband, that they corresponded, and that she thought he would come to her in Ohio, where he sent her, this evidence raised no conflict with her acts in remaining away from the husband, independent of his support for the time and under the circumstances indicated, and wholly dependent upon her parents for support, and her admission that she did not go to Cincinnati to return. This state of the evidence was within the rule announced by Mr. Justice Somerville. that "where a witness states an opinion or conclusion which is irreconcilably opposed to the stated facts upon which it is founded, the opinion or conclusion is a testimonial nonentity and raises no conflict with the stated facts" (Hicks v. Burgess, 185 Ala. 584, 587, 64 South. 290, 292), and that followed in Stockburger Bros. v. Aderholt, 195 Ala. 56, 58, 70 South. 157, where Mr. Justice Gardner adverts to a like condition of evidence, and in Cincinnati Co. v. Vredenburgh S. M. Co., 13 Ala. App. 442, 445, 69 South. 228.

As has been indicated, if the presumption of dependence is overthrown, pecuniary loss based on such presumption does not exist. And the only way for avoiding the conclusion that plaintiff could recover more than nominal damages is in the proof of facts which showed the relationship of dependency and the response thereto on the husband's part, or by accumulations, etc., as per the rule of James v. Richmond & Danville, supra; L. & N. R. Co. v. Jones, Adm'r, 130 Ala. 456, 473, 30 South. 586. The reason for the rule of presumption of dependence does not exist in the face of facts of independence which rebut that presumption and that of pecuniary loss, when no saving or probable future estate is shown as of the time of, or reasonably precedent to, the death of plaintiff's intestate, not including any income derived from property, investments, or employment of capital. McAdory v. L. & N. R. Co., supra, 94 Ala. 275, 10 South. 507; Bromley's Case, 95 Ala. 397, 11 South. 341; L. & N. R. Co. v. Morris, 179 Ala. 239, 60 South. 933; L. & N. v. Carter, 195 Ala. 382, 70 South. 655, Ann. Cas. 1917E, 292; C. & O. v. Kelly, 241 U. S. 485, 36 Sup. Ct. 630, 60 L. Ed. 1117, L. R. A. 1917F, 367; L. R. A. 1916C, 838; L. R. A. 1917F, 373; L. R. A. 1918C, 1062, 1082. That is to say, there is no sufficient data furnished by the evidence for determining compensation to be allowed the person designated as beneficiary (the child having died before or after she went to Ohio) for her pecuniary loss, immediate and prospective; and, in so far as the loss is prospective, the gross amount thereof to be determined must be reduced to its present worth. L. & N. R. Co. v. Morris, supra; L. & N. R. Co. v. Jones, supra; Ala. Min. v. Jones, 114 Ala. 519, 21 South. 507, 62 Am. St. Rep. 121; McAdory v. L. & N. R. Co., supra; L. & N. R. Co. v. Trammell, 93 Ala. 350, 354, 9 South. 870; L. & N. R. Co. v. Orr, 91 Ala. 548, 8 South. 360; James v. R. R. Co., supra, 92 Ala. 236, 9 South. 335.

Is there a conflict of authority in this state by reason of the announcements contained in Tutwiler Co. v. Enslen, Adm'r, 129 Ala. 336, 343, 30 South. 600, and Woodstock Iron Works v. Kline, Adm'r, 149 Ala. 391, 402, 43 South. 362? In Tutwiler Co. v. Enslen, supra, recovery was sought by an administrator when the earnings of the deceased minor would not benefit the estate of the beneficiary, the father. L. R. A. 1918C, 1082. Mr. Justice Haralson announced on the authority of James v. Richmond & Danville R. Co., 92 Ala. 231, 9 South. 335, that "it is only when the intestate has no distributees that nominal damages only could be given." A careful consideration of the James Case, supra, discloses that the learned Chief Justice announced that only nominal damages can be given where the deceased was not survived by a designated statutory beneficiary. The

[1] Post, p. 198.

announcement by Judge Haralson was the broader; and he adhered to his interpretation of the James Case by carrying the same expression into Woodstock Iron Works v. Kline, supra. On the instant question said two cases have not since been cited in this jurisdiction. No intention of modifying or overruling James v. Richmond & Danville R. Co. is shown; on the contrary, it is cited as authority for the announcement made in each of aforesaid cases. Manifestly, we think, the language quoted from the Tutwiler Co. and Woodstock Iron Works Cases, supra, means no more than that the recovery cannot be restricted to nominal damages, as a matter of law except when there are no distributees. It did not mean to assert that substantial damages could be given in any case, even where a distributee existed, without proof of loss to him and sufficient data for its estimation.

And to a better understanding of this announcement by Judge Haralson, we may note that the right of recovery of damages for the wrongful death or the negligent killing of a human being is dependent on statute, since at common law the death of a person precludes recovery for injury to his person even though death resulted from such injury. To meet this situation Lord Campbell's Act (9 & 10 Victoria, August 26, 1846, 86 Stat. at Large, p. 531, C. A. P. XCIII) and other subsequent and similar statutes provided that, when a person is killed under such circumstances as would have entitled such decedent to recover for injury had he survived, certain designated relatives (by consanguinity or affinity) or the personal representative of the deceased, in behalf of such relatives, are authorized to maintain an action based on such injury, and recover the pecuniary loss suffered by reason of such injury. From the earlier statutes came the statutes of the several states having application to this subject.

Even though the statutes designated the persons entitled to share in the fund recovered, the personal representative of decedent's estate is the nominal plaintiff. Tutwiler Co. v. Enslen, supra; M. J. & K. C. v. Bromberg, 141 Ala. 258, 37 South. 395; Woodstock Iron Works v. Kline, supra; Birmingham v. Crane, 175 Ala. 90, 56 South. 723; Hull v. Wimberly Co., 178 Ala. 538, 59 South. 568; Stewart v. L. & N. R. Co., 83 Ala. 493, 4 South. 373; C. & W. R. Co. v. Bradford, 86 Ala. 574, 6 South. 90.

Our court has construed the statute of this character as authorizing an action in all cases where the injury was caused under such circumstances as that the injured person was entitled to maintain an action to recover for an injury to his person had he survived, and a nominal recovery in behalf of the personal representative may be had upon such showing alone. A careful consideration of the cases shows a general agreement that, in order to recover substantial damages, it must be made to appear that the deceased was survived by "some of the designated beneficiaries, who suffered a pecuniary loss by his death." L. R. A. 1916E, 138. And where, under the statute, recovery is restricted to pecuniary loss of the beneficiary, if substantial damages are to be recovered, it is necessary to prove: (1) The existence of a beneficiary within the statutory description; it is not necessary to be averred (C. & W. R. Co. v. Bradford, supra; Woodstock Iron Works v. Kline, supra); (2) that such beneficiary suffered a pecuniary loss for the death of which complaint is made by the suit; and (3) that sufficient data be given that its present value may be determined, reduced to its present worth. C. of Ga. v. Alexander, 144 Ala. 257, 40 South. 424; James v. Richmond & Danville R. Co., supra; Cahaba Co. v. Pratt, 146 Ala. 245, 40 South. 943.

Our statute is similar to Lord Campbell's Act. M. & B. v. Holborn, 84 Ala. 133, 4 South. 146; B. R. & E. Co. v. Allen, 99 Ala. 359, 13 South. 8, 20 L. R. A. 457. In James v. Richmond & Danville R. Co., supra, the learned Chief Justice quoted from the English statute the expression:

" * * * The jury may give such damages as they may think proportioned to the injury, resulting from such death, to the parties respectively for whom and for whose benefit such action shall be brought."

Judge Stone said:

"This statute expressly directs the inquiry of damages, not to the injury, suffering, or loss sustained by the deceased in the loss of life, but confines it to the injury suffered by the parties for whose benefit the suit is brought, namely, 'the wife, husband, parent, child' of the deceased, as the case may be. This precludes all inquiry of physical or mental suffering and all compensation therefor. It does more. It denies all right to recover substantial damages, unless there is some person in being, who falls within some of the classes for whose benefit the suit is prosecuted, and who will or may suffer injury from the death of the deceased. Blake v. Midland Railway Co., 18 Q. B. 93."

And, "conforming to the convictions" of the other judges, it was held:

"That only the estimated, actual money value of the life, based on proven data, can be recovered, with no allowance for physical pain or mental anguish suffered by the deceased, or solatium to the survivors, on account of the bereavement. It would follow from this that, to authorize recovery of substantial damages, when the suit is by the personal representative, there must be some person or persons filling the relation of next of kin entitled to inherit 'according to the statute of distributions.' "

He concludes a discussion of the subject of damages with the well-known quotation from

L. & N. R. Co. v. Orr, 91 Ala. 548, 8 South. 360:

"The jury have no arbitrary discretion to give as damages what they may see proper, without reference to a proper basis from which to estimate them. That the jury may have proper data from which a pecuniary compensation may be fixed, it is proper to admit evidence of the age, probable duration of life, habits of industry, means, business, earnings, health, skill of the deceased, reasonable future expectations; and perhaps there are other facts which would exert a just influence in determining the pecuniary damage sustained."

And:

"All this we reaffirm and add that net income and habits of economy should enter into the account, as factors—important factors—in the ascertainment of accumulating capacity."

The right of the personal representative to recover at least nominal damages, where the deceased did not leave surviving him beneficiaries who suffered a pecuniary loss by his death, is grounded on the assumption of the statute that every person is of some relative value to others (Oldfield v. N. Y. Co., 14 N. Y. 310, 314; Morris v. Metropolitan S. Ry. Co., 51 App. Div. 512, 64 N. Y. Supp. 878, 880; Medinger v. R. R. Co., 6 App. Div. 42, 39 N. Y. Supp. 613; Quincy Coal Co. v. Hood, 77 Ill. 68; Johnston v. Cleveland Co., 7 Ohio St. 336; Quin v. Moore, 15 N. Y. 432), and the conditions upon which depends the right of the administrator of a person wrongfully killed to sue under the statute "is the common-law right of the injured person to maintain an action if he were living" (Oldfield v. N. Y. Co , supra); and when this condition exists the presumption obtains that beneficiaries sustain at least nominal damages (L. R. A. 1916E, 140, 142, 192); and therefore, to sustain the action for nominal damages, proof of actual pecuniary loss is not required. Such proof is only necessary to recover and sustain substantial damages. Ala. Mineral R. Co. v. Jones, 121 Ala. 113, 119, 25 South. 814; L. R. A. 1916E, 140, note. The action in this state is based on a statute providing that, if personal injury results in death, the personal representative may maintain the action therefor, the damages recoverable not being subject to debts of the deceased, and shall be distributed according to the statutes of descent and distribution. Kuykendall v. Edmondson (Ala.) 87 South. 882.[2] Pecuniary loss need not be shown to authorize nominal damages. That is, the statute of this state authorizes a recovery of damages for the negligent killing of a human being, without limiting that recovery to pecuniary loss of the beneficiary, the showing of pecuniary loss to the statutory beneficiary is not essential to the right of action, and the doctrine of nominal damages has ap-

[2] 205 Ala. 265.

plication. James v. Richmond & Danville R. Co., 92 Ala. 231, 9 South. 335; L. R. A. 1916E, 142, note. I am of the opinion that only nominal damages may be recovered. C. of Ga. v. Alexander, supra; T. C. I. & R. Co. v. Herndon, 100 Ala. 451, 14 South. 287; Alabama Mineral R. Co. v. Jones, supra; Bromley v. Birmingham Mineral R. Co., supra; B. R., L. & P. Co. v. Mosely, 164 Ala. 111, 51 South. 424; L. R. A. 1916E, 139, 154; L. R. A. 1918C, 1128. Therefore I dissent from the view announced by the majority, affirming the judgment conditionally.

SOMERVILLE, J., concurs in the foregoing.

McCLELLAN, J., concurs in the view that in the state of this evidence only nominal damages may be recovered, to the extent indicated in his separate opinion.

McCLELLAN, J. (dissenting). Upon the issue of law arising on the pleading, my judgment entirely agrees with the considerations and conclusions set down in the notable opinion of Justice MILLER. After thorough re-examination on rehearing, this concurrence in his opinion is further confirmed in conviction of its correctness. It is only by attributing to that conclusion results and effects expressly refuted in the opinion of Justice MILLER that a contradiction of the view there stated can find any basis for logical support. It was therein declared that either the plaintiff must restore that which her predecessor had received or allege facts excusing restoration, some of which Justice MILLER instances in his opinion.

The unity of the estate persists, however numerous may be succeeding administrators; and there is no warrant whatever for treating the preceding administrator s act in settling the claim as the act of an individual, not as the act of one serving in a representative capacity.

As to the damages: I can find in this record no data whatsoever upon which (under the rule for calculation set down in the Trammell Case) anything more than nominal damages might have been legally awarded. The evidence concludes against any savings by intestate. He consumed himself all he made, and had done so for many months before his death. His wife was not a charge upon his means; and    evidence excludes the idea that he was contributing to her support after her return to Ohio. This court has always held that in such actions under the Employers' Liability Act the plaintiff must adduce evidence affording the necessary data upon which an award of substantial damages may be made. Hence it is my opinion that the action of the majority of the court in conditionally fixing the recoverable damages at $2,500 is not justified.

In the main, but not entirely, I concur in the opinion of Justice THOMAS on this question.