[Beatty v. Palmer.]

# Beatty *v.* Palmer.

### Automobile Accident.

(Decided January 13, 1916.  Rehearing denied March 23, 1916.
71 South. 422.)

1. **Attorney and Client; Conduct of Counsel; Presumption.**—Good faith of counsel will be presumed in the absence of tangible indication to the contrary.

2. **Trial; Conduct of Counsel; Qualifying Jurors.**—A request and its allowance that the jurors be qualified on the point as to whether they were interested in the indemnity company, attorney for plaintiff stating that he understood that an indemnity company was interested in the case, was not erroneous, since it was not sufficient to create bias.

3. **Appeal and Error; Review; Scope.**—Argument on appeal of questions as to the sufficiency of a replication, not raised by the demurrer thereto will not be considered.

4. **Release; Rescission; Tender; Time.**—Where plaintiff was injured and made a release of his injuries, and in a suit for the damages instituted thereafter, set up mental incapacity, and that as soon as he reasonably could after discovery of the alleged settlement and release he made a tender to defendant of the sum paid, he sufficiently alleged tender at the earliest practicable moment.

5. **Same; Pleading.**—Where the action was for damages for personal injuries, and the defense was a release and settlement, a replication thereto alleging that at the time of the making of the release on account of plaintiff's weak mental and physical condition, and the use of medicine in the treatment of his injuries, he did not have the mental capacity to make such settlement, and was incapable of knowing and appreciating the extent of his injuries, sufficiently alleged that he did not know and appreciate the contents of the release so as to show fraud in securing it.

6. **Appeal and Error; Review; Matters Not Argued.**—The court will not consider on appeal questions raised by demurrer in the court below, but not argued or insisted on on appeal.

7. **Release; Rescission; Tender.**—An offer to return money paid under an alleged fraudulent release if within a reasonable time after discovery of the fraud, although rejected, is as effectual to rescind the release as if accepted, if the plaintiff so considered it, and if, in his subsequent action the compromise was sustained, he would hold the same by a valid transaction, and, if declared invalid, the sum so held should be set off against the amount allowed.

8. **Same; Evidence.**—In such an action, it was immaterial what plaintiff did with the money received in consideration of the release after he had tendered the money to defendant, and it had been rejected.

9. **Same.**—Where the action was for personal injury and suit was instituted after plaintiff had attempted to rescind the release by a tender of the

[Beatty v. Palmer.]

money paid under it, and plaintiff alleged that the release was fraudulently obtained, plaintiff was entitled to great latitude in examining the agent who obtained the release on the issue as to whether he represented defendant or an indemnity company, the witness having stated that he represented defendant.

10. Same; Jury Question.—Under the evidence in this case it was a question for the jury whether the release was fraudulently obtained, and whether at the time plaintiff was incapable of making the contract.

11, Same; Evidence.—Where the action was for personal injuries, and the defense was a release, the replication setting up a rescission of the settlement by a tender of the money paid thereunder, and fraud, the admissibility of the character of the agency and of the identity of his principals must be tested, not by its intrinsic force, but by its tendency in connection with the other evidence to show an interest in such agent in securing the alleged fraudulent settlement.

12. Same; Time; Burden of Proof.—Where the action is by plaintiff after an attempted release in damages with replication as to an attempted rescission of the release for fraud, and by tender of the money paid, the burden is on plaintiff to show the reasonable promptitude of his offer to rescind if it is denied by defendant.

13. Same.—Where it is shown that defendant and her husband were absent from their residence for sometime after a release of plaintiff's claim, letters from plaintiff's attorney seeking to rescind such settlement and release were admissible on the issue of prompt action to rescind.

14. Trial; Reception of Evidence; Portions.—Where a portion of a letter introduced in evidence is irrelevant, a general objection to the admission of the entire letter does not present the question of the admissibility of the particular portion.

15. Evidence; Matters Introduced by Other Parties.—Where defendant set up a release from liability negotiated by an agent of an indemnity company in which she was insured, she could not complain that plaintiff's attorney inquired if she was insured in such company, as she had opened up that issue herself.

16. Release; Rescission.—Testimony of the agent of plaintiff as to his authority to make a tender of the money paid in an attempt to rescind the release, was properly admitted.

17. Same; Time of Acceptance.—Where a defendant frequently rejected a tender of money made in an attempt to rescind an alleged fradulent release, defendant could not alter her status by offering on the trial to accept the money and demanding its return.

18. Evidence; Opinion.—Where a witness had given special attention to tracking automobiles by the marks of their tires, the admission of his opinion as to the identity of an automobile which he tracked was not erroneous.

19. Trial; Jury Question.—The weight and value of opinion evidence is a matter to be determined by the jury trying the case.

20. Charge of Court; Construction.—Where the charge as a whole correctly and fairly submitted the matters in controversy, it will not be held to be erroneous although isolated portions thereof are abstract and somewhat misleading.

[Beatty v. Palmer.]

APPEAL from Birmingham City Court.

Heard before Hon. A. H. ALSTON.

Action by J. B. Palmer against Mrs. Maibelle Beatty. Judgment for plaintiff, and defendant appeals. Affirmed.

It appears that plaintiff was a traveler along the street on a motorcycle, and that defendant was driving in an automobile, possibly on the wrong side of the street, and ran into plaintiff, inflicting the injuries alleged; some of the counts stating the cause in simple negligence, and some as for willful or wanton injuries. The pleas of contributory negligence were, in effect, that plaintiff, while riding a motorcycle, negligently and without looking, ran the motorcycle on or against defendant's automobile, thereby proximately contributing to the injuries complained of. The release signed by the plaintiff was in consideration of $200, and was set up by special plea; the release being set out in full. The substance of the replication sufficiently appears. The objections to the qualifications of the jurors, and the questions propounded, and the action of the court thereon sufficiently appear. The testimony of the witness Bodeker was asked relative to his experience in attempting to track criminals on paved streets.

PERCY, BENNERS & BURR, and WHITAKER & NESBITT, for appellant. ALLEN, BELL & SADLER, for appellee.

SAYRE, J.—Much of the brief for appellant, defendant in the court below, has been addressed to the alleged error of the trial court in allowing the plaintiff to parade before the jury the fact that defendant was protected by an indemnity policy in an insurance company; the inference being that by reason of such indemnity the jury, prone to discriminate between corporations and parties of flesh and blood to the prejudice of the former, would be inclined to treat the insurance company as the real defendant in the case. We have been unable to find from the record that plaintiff was allowed to travel outside the bounds of propriety or strict right. And with reference to the closely connected subject of the court's action in overruling a motion for a new trial, made on the ground, among others, that the trial was conducted in a way to prejudice the rights of defendant, we will say just here that, while the record discloses some friction between the court and counsel for defendant, the truth concerning

its origin and the manner of its demonstration on either part is so obscurely reflected by the cold type before us that it would require an exercise of the imagination to hold that it probably affected the jury unfavorably to defendant, or at all. On the evidence plaintiff's case was clearly one for jury decision, and, if plaintiff was entitled to recover, the amount awarded by no means appears to be an exaggerated compensation for the injuries suffered. There is nothing in the verdict or elsewhere in the record to show that defendant had not a fair trial, or that the result was affected by passion, prejudice, or other improper influence operating upon the jury.

(1, 2) At the opening of the trial plaintiff's attorney stated to the court in the presence of the jury that he understood some indemnity company was interested in the case, and requested that the jury be qualified on the point whether or not any of them had any interest in any such company. Defendant objected to the statement of what plaintiff's attorney understood, and, her objection being overruled, she duly excepted. She also objected to the jury being qualified as proposed, and, this objection being overruled, she again excepted. Thereupon the court asked the jury whether any of them were interested in any indemnity company. No reply coming from the jury box, the court pronounced the jury qualified.

Defendant complains here that this proceeding was improper altogether, as calculated to prejudice her defense, and that in any event there was error in qualifying the jury by this inquiry without some proof that an indemnity company was interested. In *Citizens' Company v. Lee*, 182 Ala. 561, 62 South. 199, this court held that it was not improper to qualify the jury in respect of their connection with or interest in any indemnitor the defendant might have; due care being exercised that nothing be done or said to create bias or excite prejudice in the minds of jurors who were not disqualified. In that case plaintiff made proof that defendant had an indemnity contract with an insurance company. We are disposed to be careful on this point; but, the right conceded, and the good faith of counsel presumed, as it must be on the absence of some tangible indication to the contrary, we hardly see how the right to have the jury qualified could have been more inoffensively asserted. The taking of proof, the examination of witnesses, could only have served to press the point upon the jury's attention, and thus more fully to develop the bias

[Beatty v. Palmer.]

or prejudice against which defendant thought it necessary to take precaution by the objections she interposed. Counsel might well have omitted the statement that he understood some indemnity company was interested in the case. But in view of the ruling in *Citizens' Company v. Lee, supra*, where proof was taken, we think this statement could hardly have been understood by court or jury as anything more than an offer to introduce testimony, if demanded; and, if the court at that stage of the case had gone into the question whether defendant was protected by an indemnity contract, plaintiff would have been entitled to prove that his understanding as to the fact was correct, and later developments made it highly probable that he would have offered the evidence to which, when offered later in another connection, defendant interposed strenuous objection. Upon the whole we do not see that this matter could have been better managed in the trial court.

Plaintiff's suit was for damages for personal injuries alleged to have been inflicted by defendant in the negligent operation and management of her automobile on a public highway. Defendant pleaded the general issue, contributory negligence, and a plea of composition and release. To this last plea plaintiff replied, specially alleging, in effect, that at the time of said composition and release, by reason of his weak mental and physical condition and the use of medicines in the treatment of his injuries, (replication 2) he did not have the mental capacity to make said settlement, (replication 3) he was incapable of knowing or appreciating the extent of his said injuries, and (both replications) that defendant's agent, knowing his condition, induced and unduly influenced plaintiff to make said settlement and accept a sum grossly less than would have been a fair and just compensation—a species of fraud. These two pleadings also alleged that plaintiff, so soon after the discovery by him of the alleged settlement as he reasonably could, tendered or caused to be tendered to defendant the sum so received, which defendant refused to accept.

(3, 4) The argument against these replications is more searching than the questions stated in the demurrers filed in the court below. It is said here that the third replication, while alleging that plaintiff was incapable of knowing or appreciating the extent of his injuries, fails to allege that he did not know and appreciate the contents of the release. Without intending to

[Beatty v. Palmer.]

intimate that there was any merit in this contention, it will suffice to say that the demurrer did not take the point. It is further said of both special replications that they did not show that the right to rescind was exercised at the earliest practical moment. The demurrer was that plaintiff did not appear to have acted promptly in rescinding the contract of settlement. · In *Stephenson v. Allison*, 123 Ala. 439, 26 South. 290, the language of the court, adopted from the Supreme Court of New York, was that the party defrauded must disaffirm at the "earliest practical moment" after discovering the fraud. At one point in *Birmingham Ry. Co. v. Jordan*, 170 Ala. 530, 54 South. 280, this phrase was repeated, but at another place in the same opinion the expression was "reasonable time." In *Barnett v. Stanton*, 2 Ala. 181, a case involving the rescission of a contract of sale of personal property by an offer to return the chattels sold, the court said that the party who would rescind must act promptly, or, as the court put it elsewhere in the opinion, and as our other cases and the authorities generally put it, the right to rescind must be exercised within a reasonable time, i. e., with due promptitude after the fraud is discovered, or might have been discovered by the use of due diligence.—*Whitworth v. Thomas*, 83 Ala. 308, 3 South. 781, 3 Am. St. Rep. 725; *Young v. Arntze*, 86 Ala. 116, 5 South. 253; *Hayes v. Woodham*, 145 Ala. 597, 40 South. 511; *Comer v. Franklin*, 160 Ala. 573, 53 South. 797; 9 Cyc. 435, and note 69. We consider that there is no substantial difference between the cases on this point, nor any between the measure of promptness alleged in the replications and that asserted by the demurrers.

(5) These replications also sufficiently showed that plaintiff's mind was in such unsound condition as to render him incapable of making a binding contract.—*L. & N. R. R. Co. v. Huffstutler*, 162 Ala. 619, 50 South. 146.

(6, 7) Defendant also demurred to these special replications on the ground that the alleged tender was not shown to have been kept good. The assertion of the demurrer is reiterated in the brief, where it touches the sufficiency of the replications, but there is no argument, and under our rule we might pretermit consideration of it; but much the same question was raised by objections to evidence, which have been argued, and may as well be disposed of at this point. These replications did not plead the tender—it may be more aptly designated as an offer

to return the money—as a discharge of debt or liability, in which case a tender must be kept good, since the debt or liability remains, although the tender be refused. They set up the tender as a fact sufficient in itself to effect a rescission of the contract of release and to restore plaintiff's original cause of action. The offer, if made within a reasonable time after the discovery of the fraud, though rejected, was just as effectual to rescind the contract of release as if the defendant had accepted it, if the plaintiff chose to so consider it.—*Barnett v. Stanton, supra; Samples v. Guyer,* 120 Ala. 611, 24 South. 942; *Hayes v. Woodham, supra; Comer v. Franklin, supra.* Thereafter the capacity in which plaintiff held the money depended upon the result of his suit. In the event the compromise was sustained, he would retain the money by virtue of a valid transaction. If the settlement was rescinded, the amount received in the settlement might be deducted from the damages assessed, as the court directed—in effect, a return of the money paid for the release; or, if by any chance the sum so paid had exceeded the amount of recoverable damages, then plaintiff would hold the difference as an involuntary bailee for the defendant. In these circumstances, though it be assumed that defendant could have shown that plaintiff used the money for his own benefit after defendant refused to accept it as upon a rescission of the release, it would be contrary to justice to regard such use as conclusive against plaintiff, if, as he alleged, there had been no intelligent and valid settlement of his claim for damages. Cases cited in the brief for defendant (appellant) will be found on analysis to hold nothing to the contrary. In *Birmingham Ry. Co. v. Jordan, supra,* there was never any rescission, for the reason that there was never at any time an offer to restore the money plaintiff had received in settlement of the claim she was suing. So in *Harrison v. Ala. Midland,* 144 Ala. 256, 40 South. 394, 6 Ann. Cas. 804, and *Birmingham Ry. v. Hinton,* 158 Ala. 470, 48 South. 546. In *Kelly v. L. & N. R. R. Co.,* 154 Ala. 576, 45 South. 906, the tender had been delayed for years. Other cases dealt with the right to rescind, and the question of waiver, after the discovery of fraud, but before the offer to restore, by delay or dealing with chattels the title to which passed by the transactions in litigation. We have also some cases in which the party offering to rescind waived the rescission, once accomplished on his part by a seasonable proper offer, by subsequently dealing with the property as his own. But these

cases, involving the passage of the legal title to specific chattels back and forth between the parties—not money, in which case one dollar is in law the equivalent of any other dollar—and depending for solution upon the final situs of the title as determined by the conduct of the parties, were not complicated by any questions as to the compromise and release of mere monied demands.

(8) Assignments of error from 38 to 42, both inclusive, are based upon rulings by which the court denied to defendant the right to go into the question as to what plaintiff did with the money after he had offered to return it and defendant had refused to receive it. Under the foregoing principles of law these rulings were free from error.

(9, 11) On cross-examination of a witness for defendant plaintiff was allowed to develop the fact that at the time of the alleged contract of compromise and release the witness had in that matter represented the General Accident & Fire Insurance Company. This is assigned for error. The witness had negotiated the alleged settlement with plaintiff. On his direct examination he had testified that he had told plaintiff that he represented Mrs. Beatty and her husband; that they regretted the accident, and were willing to assist him in bearing his expenses at the hospital to which he had been removed for treatment. But defendant, testifying as a witness in her own behalf, had denied that witness had any authority at the time to represent her in that transaction. A plea had been filed alleging that the cause of action had been settled and released by plaintiff in consideration of $200 paid by Mr. and Mrs. Beatty. To this, as we have seen, plaintiff replied that the release had been procured by fraud in legal effect. There was evidence from which the jury may have found that plaintiff was at the time incapable of making an intelligent agreement. The jury may have inferred also that the witness negotiated the settlement, whomsoever it was intended to benefit, under circumstances that urgently suggested the propriety of its postponement to a more convenient season. These, under the evidence, were questions for the jury. On the issue of fact thus presented plaintiff was entitled to great latitude in the production of evidence, especially so in the cross-examination of this witness.—*Mann v. Darden*, 171 Ala. 142, 54 South. 504. The admissibility of the fact elicited was not to be tested by its own intrinsic force, but by its bearing in connection with all other evidence in the cause having any relation to the same

po°nt —*Snodgrass v. Branch Bank,* 25 Ala. 174, 60 Am. Dec. 505; *Nelms v. Steiner Bros.,* 113 Ala. 562, 22 South. 435. Plaintiff not only was entitled to show that the witness did not represent the defendant, but to show that he was acting for some person having an interest to be affected as tending to shed light upon his motive and purpose in negotiating the compromise under the circumstances in evidence. Defendant, though she denied that the witness had acted by her authority in procuring the release, was relying upon the instrument, and the jury were entitled to know every circumstance tending to disclose the true inwardness of that transaction. Defendant might have avoided any involvement with the motive and purpose of the person for whom the compromise was negotiated by refusing to plead the release. Having pleaded it, she assumed the burden of every infirmity that attached to it by reason of the circumstances in which it was negotiated.

(12-14) Under the pleadings the burden was on plaintiff to show the reasonable promptitude of his offer to rescind. In connection with proof of the absence of Mr. and Mrs. Beatty from their place of residence shortly after the accident the letters addressed by plaintiff's attorneys to them, and offered in evidence, were properly admitted as tending to show diligence in the offer to rescind. If the last expression contained in the letter to defendant was considered to be irrelevant and hurtful, defendant should have moved to exclude that part of it. Instead, her objections were taken to the letters in their entirety.—*L. & N. R. R. Co. v. Britton,* 163 Ala. 168, 50 South. 350. Many cases might be cited to this point.

(15) *Watson v. Adams,* 187 Ala. 490, 65 South. 528, to which counsel for appellant gratefully refers as a return after many days of bread cast upon the waters, does not sustain their position here. In that case it was held for reversible error that the court permitted a cross-examination of the defendant which, as the court found, had for its object the introduction to the jury of wholly illegal evidence to the effect that an indemnity company was defending, in defendant's name, against liability for the wrong of which the plaintiff complained; whereas in the case at bar defendant opened the way for every question asked by plaintiff on the point when she pleaded, and relied upon a release purporting to have been executed to her, but which was, in fact, negotiated by the indemnity company without her authority or

[Beatty v. Palmer.]

knowledge and under circumstances, according to tendencies of the evidence for plaintiff, that impeached its validity. The record here does not show that plaintiff laid any greater stress upon the subject than the legitimate needs of his case justified.

(16, 17) We do not think it is to be doubted that offers were made to return the money to defendant, to her husband, and to the indemnity company, plaintiff being then in doubt as to whom the tender should be made, or that the tender was refused on every hand. Nor do we see that there was error in allowing the witness Sadler, who made these tenders, to state what authority he had for making them for the head of the firm of attorneys having charge of plaintiff's case. Defendant's offer at the trial to accept the money, and her demand for its return came too late to affect the status of right fixed by her previous refusal, if, indeed, she had color of right to it in any aspect of the case.

(18, 19) No error was committed in the examination of the witness Bodeker. The matter about which he gave his opinion was an ordinary one; but he had given special attention to the subject, and it was quite possible for him to have a better knowledge of it than the average man who had given it no thought.— *Staples v. Steed,* 167 Ala. 241, 52 South. 646, Ann. Cas. 1912A, 480. The value of the witness' opinion was a matter for consideration by the jury.

(20) Exceptions to parts of the court's oral charge to the jury do not require separate treatment. They have been examined with due care without finding reversible error. If it may be said that some expressions which have been culled from the charges were abstract, as where the court, when stating the law of plaintiff's alleged contributory negligence, said, in effect, that plaintiff's contributory negligence would bar a recovery, "even though defendant was not on the proper saide of the street," and in some fragmentary expressions thus isolated from their context be found to have involved some misleading tendencies in their statements of the law of the case, still the charge, when considered as a whole, laid the case and all its issues very fairly before the jury, and we find in it no sufficient reason for a reversal.

We have stated our consideration of all matters of importance assigned for error. Finding no reversible error, the judgment of the court below will be affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN and GARDNER, JJ., concur.