# CHARLESTON.

MARY C. ADAMS *v.* THE CLINE ICE CREAM COMPANY

(No. 5536)

Submitted February 2, 1926.   Decided February 16, 1926.

TRIAL—*Statement by Plaintiff's Counsel During Voir Dire Exam-
ination, in Presence of Jury, That He Wished Jury Quali-
fied as to Whether They Were Interested in Company in
Which Defendant Carried Insurance, Held Improper.*

In the examination of jurors on their *voir dire,* as well as
during the trial of the case, counsel should scrupulously re-
frain from suggestion or comment which may convey to the
jury information prejudical to the opposite party.

LIVELY, JUDGE, absent.

(Trial, 38 Cyc. p 1498.)

(NOTE:  Parenthetical references by Editors, C. J.—Cyc.   Not
part of syllabi.)

Error to Circuit Court, Kanawha County.

Action by Mary C. Adams against the Cline Ice Cream Company. Judgment for the plaintiff, and defendant brings error.

*Judgment reversed; verdict set aside; new trial awarded.*

*R. G. Kelly* and *Morton, Mohler & Peters,* for plaintiff in error.

*Lively & Stambaugh,* for defendant in error.

HATCHER, JUDGE:

This is an action for damages for personal injuries resulting from a collision, on August 16, 1924, between an automobile belonging to the defendant and one in which the plaintiff was riding. The case was tried in the Circuit Court of Kanawha County in July, 1925, when the plaintiff secured a judgment of $2,000.00 against the defendant. Numerous errors are alleged here, but we need discuss only one, which in itself constitutes reversible error.

During the *voire dire* examination of the jury counsel for plaintiff stated to the court in the presence of the jury, ''I have information to the effect that the Cline Ice Cream Company carries insurance in the Standard Accident Company. I would like to have the jury qualified as to whether any member of this panel is a stockholder, officer, director, or employee of the Standard Accident Company, if it is true that they carry casualty insurance with that company.'' Counsel for defendant at once moved the court to discharge the panel and summon a new one, which motion the court overruled. During a colloquy which ensued between counsel for defendant and the court, counsel stated that the defendant carried no insurance with the Standard Accident Insurance Company. Thereupon the court asked counsel if his statement meant that the defendant carried no insurance at the time of the accident. Counsel replied that he did not mean to state that. Later the court instructed the jury that it appeared to the court that on the day of the accident the Standard Accident Company did not carry casualty insurance for the defendant, and that the jury should disregard all proceedings had

with reference to the inquiry made by counsel for plaintiff.

The effect of the entire proceedings was to impress the jury that while the defendant did not carry insurance with the company named, it did carry insurance with some company.

In *Walters* v. *Appalachian Power Co.*, 75 W. Va. 676, this court held that the admission of evidence that defendant carried insurance indemnifying it against loss, was prejudicial error. In *Christie Admr.* v. *Mitchell*, 93 W. Va. 200 Judge MILLER condemned persistent questioning as to such insurance in the following caustic terms: "The impropriety of eliciting such evidence is unquestionable. The only purpose was to prejudice the jury in favor of plaintiff against defendant. The effect thereof could not have been wholly cured by the rulings of the court that the questions were improper, and by telling the jury not to regard the answers." In *Moorefield* v. *Lewis,* 96 W. Va. 112, Judge LITZ unequivocally stated: "The jury in such case should not be apprised of the fact that the defendant by indemnity insurance is protected against damages. * * * The trial court should have sustained the motion to discharge the jury because of counsel's effort to inject into the trial a matter so plainly erroneous and highly prejudicial to defendant." In *Moorefield* v. *Lewis, supra,* the objectionable remark was made in the opening statement of the case to the jury, after it had been selected and sworn. We see no difference whether the information that the defendant carries such insurance is lodged in the mind of a juror before or after he is sworn. In each instance the effect is unquestionably the same.

· Numerous authorities are cited in plaintiff's brief which sustain the right of counsel to make *inquiry* of jurors if they are connected in any way with an indemnity company. But that is not the point at issue here. It is not the right to question, within reason, but the right *to inform the jury* that a litigant is indemnified against loss, that is challenged. Counsel do cite three cases, *Spoonick* v. *Backus Brooks Co.*, 89 Minn. 354, *Faber* v. *Reiss Coal Co.*, 124, Wis. 554, and *Beatty* v. *Palmer,* 196 Ala. 67, in which such a statement was held not reversible error. The case of *Beatty* v. *Palmer, supra,*

held that good faith of counsel in making such statement will be *presumed,* and that such statement "was not erroneous since it was not sufficient to create bias." In *Spoonick* v. *Backus Brooks Co., supra,* the court also proceeded on the theory that jurors "will treat all litigants fairly and impartially, will be guided by the testimony and that they will not be influenced by any other consideration than that of justice and fair treatment to all." The court further stated that its views "are expressed in a case where there is nothing to indicate that there was lack of good faith on the part of counsel" in making the statement. The views expressed in these two cases are so different from those held by this court that we find in them nothing in common with ours. Alabama and Minnesota may have Utopian juries, but in the other and less fortunate states it is still recognized that juries are not en-. tirely free from the passions and prejudices that sway mankind, that they are not wholly untouched by a tendency to be less careful of the rights of a litigant known to be protected by indemnity insurance. We see no merit in the theory of the Alabama and Minnesota courts that if counsel convey such information to the jury *in good faith,* no error results. In the first place, by what rule is the good or bad faith of counsel in making such a statement to be ascertained? By what process can a court fathom the ratiocination, or lack of it, prompting an unexplained statement? In the second place, if no harm is done by such statement, as the Alabama and Minnesota cases hold, what difference whether it be made in good or bad faith? On the contrary, if the statement prejudices a jury, the prejudice works its bane, no matter what motive actuates the statement. *The real test is the effect on the jury.* The Minnesota court has receded in part from the position assumed in the *Spoonick case.* In *Viou* v. *Brooks-Scanlon Lumber Co.,* 99 Minn. 97, a similar statement of counsel was held not reversible error, "as the usual measure of good faith was present." But in the opinion it was conceded that "counsel has no right to gratuitously state to the jury facts as to the defense of the case by the casualty company by its attorney appearing on trial. And it may well be held where attorneys, presumably learned in the law could not have made

such statement for any legitimate purpose, and the statement made was calculated to have the effect of prejudicing the jury, that the court should hold this to be reversible error.'' In *Faber* v. *Reiss Coal Co., supra,* the remark of counsel was made ''in response to the court's suggestion,'' which taken in connection with the other proceedings had, was held not to constitute reversible error. In its opinion the court upheld the right of counsel to ascertain whether jurors have a pecuniary interest in the litigation, but further admonished: ''This, however, in no way gives counsel a license to communicate improper matters to the jurors, or to the court within their hearing, in connection with such inquiry. Such examination should be held strictly within the limits of such right, and by direct question on the subject, unaccompanied by suggestions or comment from counsel which may convey improper and prejudicial information to jurors.'' See also *Howard* v. *Lumber Co.,* 129 Wis. 98.

We find no support in other states to the decisions in *Beatty* v. *Palmer, supra,* and *Spoonick* v. *Backus Brooks Co., supra.* The concurrence of authority is with the opinion in the Reiss case. Not only is a direct statement that a party is insured condemned, but it is held equally improper for counsel to convey such information to the jury indirectly. *Mithen* v. *Jeffrey,* 259 Ill. 372; *Putnam* v. *Pacific Monthly Co.,* 68 Ore. 36; *Pekin Stave Co.* v. *Ramey,* 104 Ark. 1; *Pierce* v. *Co.,* 161 Cal. 176; *Casselmon* v. *Dunfee,* 172 N. Y. 507; *Swift* v. *Platte,* 68 Kan. 1; *Hollis* v. *U. S. Glass Co.,* 220 Pa. 49; *Chybowski* v. *Bucyrus Co.,* 127 Wis. 332.

There is no intention on the part of courts to hamper counsel in the proper interrogation of jurors. Counsel are conceded the right to explain to the trial court, in the absence of the jury, the reason prompting a desire to interrogate the jurors along a specific line. If permission be granted, the bare question should be asked, unaccompanied by comment or suggestion. *Girard* v. *Grosvenor,* 82 Conn. 271.

In the armory of the law, the privilege of counsel to interrogate jurors on their *voir dire* is a shield and not a dagger— a shield to protect a client and not a dagger to stab his opponent. Counsel must not mistake his weapon.

In response to the request of her counsel to name the injuries which she received in the accident, the plaintiff replied that the one permanent injury was her "weak spine," that she was not able to walk much, and that she suffered from nervousness and insomnia. She did not testify that she suffered from none of these ills before the accident, and no statement was made of wound, pain, or tangible injury received in the accident. She admitted receiving no treatment from physicians after August 24, 1924, except numerous pills and tonics, and failed to show what treatment, if any, she received between the date of the accident and August 24, 1924. No physician testified as to the kind or extent of her injuries. Frank Ferguson, who pulled plaintiff from under the wrecked car, testified that she walked away from the place of the wreck; that he visited her at her home the day following the accident; and that she then told him "she was not hurt only she was bruised." The evidence of Ferguson was not denied.

In *Moorefield* v. *Lewis, supra,* this court sustained the judgment only because it was a plain case for recovery and there was no reflection of prejudice in the amount of damages assessed by the jury. In the present case, however, the evidence of substantial injury to the plaintiff is so unsatisfactory, that we cannot say the verdict is free from prejudice.

For the foregoing reasons the judgment of the circuit court will be reversed, the verdict set aside and a new trial awarded.

*Reversed; verdict set aside; new trial awarded.*