MARY ESTELLA BUTCHER

*v.*

Q. G. STULL, *et al.*

(No. 10648)

Submitted April 20, 1954.  Decided June 8, 1954.

32

*Wysong* and *Wysong,* for plaintiffs in error.

*Henry McLane, R. A. Clapperton,* for defendant in error.

BROWNING, JUDGE:

Mary Estella Butcher instituted this action of trespass on the case to recover damages in the amount of $2,500.00 for personal injuries sustained in a collision between an automobile, operated by herself, and an automobile driven by the defendant Armstrong, owned and operated by the defendant Stull as a taxicab. The jury returned a verdict for the plaintiff in the full amount sought, and judgment was entered thereon, to which this Court granted a writ of error on November 16, 1953.

The evidence is flatly contradictory as to the material facts, the plaintiff and the defendants presenting distinct, if not irreconcilable, versions of the collision. The accident occurred at approximately 1:30 o'clock on the morning of

February 24, 1953, a short distance north of Summersville, West Virginia, on U. S. Route No. 19.

Plaintiff, who was proceeding north, testified that the defendant Armstrong, driving south, was attempting to pass another automobile going in the same direction, and had driven over into the left lane; that she pulled as far as possible on to the berm on her side of the road, "eased" on the brakes, and reduced her speed to twenty or twenty-five miles an hour; that defendant never succeeded in passing the other car prior to the accident; and that, after the collision, her automobile proceeded a short distance and crashed, at an angle of approximately 45° to the road, into a rock ledge on her right side of the highway. Plaintiff's witnesses, all of whom might be said to have some interest, with the exception of the State Trooper who investigated the accident, testified that glass and debris were discernible only in the lane in which plaintiff was traveling.

The defendant Armstrong testified that, as he rounded a slight curve in the road, he saw plaintiff's automobile some 400' ahead approaching on the wrong side of the road; that he drove on to the berm on his side of the road, and his automobile was there struck by plaintiff's vehicle; and, that after the collision, his automobile went into a ravine on his side of the road, about 15' beyond the point of collision. Defendant Armstrong denies that he attempted to pass another automobile, or that a third automobile was near the scene of the collision. Defendants' witnesses, who were likewise interested, stated that all glass and debris was in the lane in which defendants' automobile was proceeding; that tire tracks were discernible along the berm of the road for a distance of from 60' to 80' before going over the embankment; and that the tracks were identifiable as those of the defendant because of the special mud and snow grip tires used on defendant's vehicle.

The State Police officer testified that glass and debris were scattered for a distance along the center of the highway, and, that, though he noticed tracks on the berm on

defendant's side of the road, he could not discern any treadmarks. This witness further stated that Armstrong told him, a short time after the collision, that the speed of his automobile was 50 to 55 miles an hour. The plaintiff testified to hearing this conversation, and that Armstrong said "he was making between 55 and 60." At the trial, Armstrong stated that he was "approaching the curve out there", and that he was traveling at a speed "I would say 35 or 40" miles an hour. Upon being asked whether he told anyone that he was traveling at a speed of 50 to 55 miles an hour, he answered: "Not that I remember." Upon cross-examination, he stated further that he was traveling at a rate of 35 or 40 miles an hour when he saw the headlights of plaintiff's automobile, applied his brakes, and at the point of impact "I couldn't have been doing over 20."

The plaintiff's injuries consisted of a cut lip, in which seven stitches were taken, and superficial lacerations and bruises, none of which was permanent, with the exception of the scar on the lip. She incurred medical expenses of $25.00, and testified that she was unable to perform her ordinary household duties for about six weeks.

The following are the assignments of error relied upon by the defendants: (1) The verdict is not supported by the evidence; (2) the trial court erred in giving Instructions Nos. 1 and 2 for the plaintiff, and refusing to give Instructions Nos. 4, 6, 7, 12 and 13 for the defendants; (3) the refusal to permit a defense witness to testify as to the speed of plaintiff's automobile; (4) the verdict was excessive; and (5) permitting the defense witness Haggerty to be cross-examined by plaintiff's counsel relative to his occupation, thereby revealing to the jury that Haggerty was an insurance adjuster, and that defendant Stull had indemnity insurance.

As hereinbefore stated, the testimony of the only two witnesses to the collision who testified at the trial, the plaintiff and the defendant Armstrong, is in complete conflict. The plaintiff stated that the defendant Armstrong drove his automobile into her lane of traffic, and, although

she went on to the berm to her right side of the highway, nevertheless, she was unable to avoid the collision with the taxicab. The defendant Armstrong just as decisively testified that the plaintiff drove her automobile into his lane of traffic, and that, although he left the highway and went on to the berm on his side of the road, that the collision occurred at that point.

Several witnesses testified on each side as to the physical facts which they observed subsequent to the collision, some supporting the plaintiff and some the defendants. The numerical weight of the evidence was on the side of the defendants, but a jury is not required to accept the version given by the superior number of witnesses in contrast to a smaller number testifying to the contrary. The rule is firmly established in this jurisdiction that a verdict of a jury upon conflicting facts, under proper instructions, will not be disturbed unless plainly wrong or manifestly against the weight of evidence. In *Adkins* v. *Raleigh Transit Co.*, 127 W. Va. 131, 31 S. E. 2d 775, this Court said: "The evidence of the plaintiff and that of the defendants, in all essential particulars, conflicts. In view of the jury's resolving this conflict in the plaintiff's favor, we must, in the appraisal of this case, as every trial court should do in the consideration of a motion for a directed verdict, entertain every reasonable and legitimate inference favorable to the plaintiff fairly arising from the evidence, considered as a whole, and assume as true those facts which the jury may properly find under the evidence."

The questions as to whether there was primary negligence on the part of the defendants, or, assuming primary negligence, whether the plaintiff was guilty of negligence proximately contributing to the collision, and her resulting injuries, were factual ones for the jury. The verdict is supported by the evidence.

The giving of plaintiff's Instruction No. 1 has caused this Court some concern, and a lucid discussion of it requires that it be quoted in full. "The court instructs the jury that under the laws of the State of West Virginia, no per-

son shall drive a vehicle upon a highway of this state with a speed which is greater than will permit the driver to exercise proper control of the vehicle in order to decrease the speed or to stop as may be necessary to avoid colliding with another vehicle properly upon the highway, and if you believe from all the evidence in this case, and by a preponderance thereof, that the defendant, Elbon Armstrong, was operating a taxi owned by the defendant, Q. G. Stull, on U. S. Route 19, at the time of the accident at a speed that was greater than would permit him to exercise proper control of the taxi and decrease the speed or stop said taxi in order to avoid colliding with the car being driven by the plaintiff, and if you further believe that the plaintiff was exercising due care, and that the operation of the taxi by the defendant, Elbon Armstrong, was the proximate cause of the accident, then you are instructed to return a verdict for the plaintiff." If based upon applicable testimony, there is no question about the propriety of this instruction.

Chapter 129, Article 6, Section 1 (a), Acts of the Legislature, Regular Session, 1951, provides in part: "* * * In every event speed shall be so controlled as may be necessary to avoid colliding with any person, vehicle or other conveyance on or entering the highways in compliance with legal requirements and the duty of all persons to use due care." If the evidence of the plaintiff is taken as true, and in view of the verdict of the jury it must be, the negligent act of the defendant Armstrong, which caused the collision, was either the attempt to pass an automobile traveling in the same direction as he at a time and place where such an act was forbidden by statute, in view of the approach from the opposite direction of plaintiff's automobile, or the driving of the taxicab by Armstrong into the opposite traffic lane where the plaintiff's automobile was struck, or both. However, even if the defendant Armstrong had, prior to the collision been doing either of these negligent acts, but had been operating his automobile at a speed which permitted him to exercise proper control of it, the collision would not have occurred.

The only objection made to Instruction No. 1 by the defendants was: "The defendants object to Plaintiff's Instruction No. 1 because there is no evidence in this case of any character to the effect that the defendant Armstrong was exceeding the speed limit prescribed by the laws of the State of West Virginia at the time of or immediately before the accident." This being the only specific objection made to the instruction, it is the only one that can be considered by this Court under Paragraph (e) of Rule VI, Rules of Practice and Procedure for Trial Courts, 116 W. Va. lxiii; *Isabella* v. *W. Va. Transportation Co.*, 132 W. Va. 85, 51 S. E. 2d 318. This instruction does not tell the jury that they may consider the fact that the defendant Armstrong was, at the time of, or shortly prior to the collision, operating his motor vehicle at a speed in excess of the statutory maximum. As heretofore stated, it is directed at an entirely different alleged act of negligence, and one likewise forbidden by the statute heretofore quoted. The fact that the defendant Armstrong was operating his vehicle at less than the legal rate of speed at the place where the collision occurred would not excuse him from the charge of negligence if his speed at the time and place was such as to violate his duty to use due care. This Court holds that the giving of this instruction, upon the factual situation presented by the record, and the objection made to it by the defendants, was not reversible error.

Plaintiff's Instruction No. 2 told the jury that in estimating the damages, if they found for her, they might take into consideration the pain and suffering incurred as a result of her injuries and "the permanency of the injuries which she suffered as a result thereof." The objection to this instruction was upon the ground that "there is nothing in the declaration which would permit the question of permanent damage to be submitted to the jury." However, the declaration states that: "* * * the plaintiff was greatly scarred, bruised and injured, her face lacerated, and she was permanently scarred and disfigured, and by reason of her said injuries, the plaintiff is permanently injured and

disabled; * * *." The question of whether the evidence supported the allegations of the declaration, as to the permanency of plaintiff's injuries, will be discussed under another assignment of error. Plaintiff's Instruction No. 2 was properly given over the objection interposed.

Instruction No. 4 was properly refused, it being covered by Defendant's Instruction No. 2. Instruction No. 6 would have correctly informed the jury of the duty owing by the plaintiff to a guest in her automobile, but the guest was not a party to this action, and the instruction was properly refused. The court refused Instruction No. 7 on the ground that it contained elements of the last clear chance doctrine, not supported by the evidence, and such action was not erroneous. Defendants have abandoned the assignments of error as to Instructions Nos. 12 and 13.

Upon cross-examination by the defendants of plaintiff's witness Bailey Frame, this question was asked: "And you would judge from that" (the condition of the plaintiff's car against the rocks) "that the car was going pretty fast when it hit the rocks; is that right?" The objection to this question was sustained by the trial court. The trial court correctly refused to permit this witness to answer the question, inasmuch as he did not observe the speed of plaintiff's automobile, and to estimate such speed by observation of the vehicle, subsequent to the collision, would have permitted him to give an opinion or a conclusion that was not admissible. The jury was entitled to hear the estimates of speed of both automobiles by those who witnessed them in motion, and to hear testimony, as they did, as to the distance the vehicles traveled after the collision, and their condition at the places where they came to rest. The opinion of this witness would have been merely conjectural and speculative. It was not shown that he was an expert on such matters.

Dr. Earl L. Fisher, a physician and surgeon, of Gassaway, treated the plaintiff for her injuries in the early morning of February 24, a short time after she was injured. He gave this description of her physical condition at that time:

"She had a severely cut lip, upper lip. There was a cut on her left knee, I believe, and she was bruised considerably; that is, brush burns and bruises of her chest, face, legs and arms." He stated that her upper lip was cut completely through to the inside, and that the suturing of it required several stitches. The plaintiff stated that seven stitches were taken in her lip. The other injuries were also attended to, and the plaintiff was seen professionally by this witness frequently for the "next two or three weeks." When asked whether the injuries would have incapacitated the plaintiff, the physician stated: "They would for a while, for more reasons than the injury. I mean the shock that went along with the injury, which she was in when she came in, would incapacitate her for a while, yes, sir." The witness was asked to observe the upper lip of the plaintiff and point out to the jury the place where the cut was incurred. He did so, and stated: "The scar right here shows. I mean it was cut down through on the other side. It was pulled apart." He further stated that the scar "will be permanent, as it is now.", but that it would not cause her any permanent disability. The plaintiff stated that she was a housewife, and that she was not able to perform her ordinary daily duties for a period of about six weeks subsequent to the accident. We have found little helpful authority in this jurisdiction, or elsewhere, upon the question of the excessiveness of a verdict involving a scar of the type described upon a woman's face. However, in view of the injuries described, the pain and suffering inflicted, the length of disability incurred, and particularly the injury to plaintiff's lip, with the resultant scar, which was observed by the jury, and which will remain for the duration of her life, the verdict was not excessive.

In *Yuncke v. Welker*, 128 W. Va. 299, 36 S. E. 2d 410, this Court held, as it has on many other occasions, that: "The verdict of a jury in an action for personal injuries will not be set aside as excessive unless it is unsupported by the evidence, or is so large as to indicate that the jury was influenced by passion, partiality, prejudice or corruption, or entertained a mistaken view of the case." The trial

court correctly refused to set aside the verdict upon the ground that it was excessive.

The witness Haggerty was offered in chief by the defendants, and was a material witness supporting the testimony of both defendants and other witnesses as to the alleged tire tracks of the taxicab, the measurements of the tracks visible on the berm of the highway, and gave other pertinent testimony that refuted the evidence of the plaintiff and her witnesses. This witness was not identified by the defendants as to his occupation or place of residence. He had appeared at the scene of the collision the day after it occurred, and no reason was given for this, or his interest in the matters about which he testified. He and Corporal McClain appeared to be the only material witnesses who were disinterested. Upon cross-examination, the second question asked this witness by counsel for the plaintiff was: "What is your business?" An objection was interposed, and thereafter, in the judge's chambers, the question of the propriety of this interrogation was discussed at some length, it being revealed at that time to the trial judge that his answer would be that he was an insurance adjuster, and his reason for being at the scene of the collision was to make an investigation on behalf of the insurance company with which the defendant Stull carried indemnity insurance. The objection to the question was overruled, and on the following morning, counsel for the plaintiff proceeded to cross-examine the witness, and these questions were asked, and these answers made:

"Q: Mr. Haggerty, by whom are you employed?"

"A: I am employed by Haggerty Insurance Service."

"Q: And what is your position with Haggerty Insurance Service?"

"A: I am an insurance adjustor."

"Q: On whose behalf were you summoned to this court to testify?"

"A: Mr. Stull's."

"Q: At whose direction did you go to the scene of the accident?"

"A: With Mr. Stull."

"Q: At whose request did you go to the scene of the accident?"

"A: That was my own idea. I mean that is part of the investigation."

"Q: You work independently, then, on these investigations?"

"A: That's right."

"* * *"

"Q: What interest did you have in investigating this accident?"

"A: That was my job, to investigate accidents."

"Q: Your job was to investigate accidents, and you were employed to do so by the Haggerty Insurance Agency; is that right?"

"A: Haggerty Insurance Service, yes, that's right."

"Q: What interest do they have in this case?"

"A: They, of course, insure Mr. Stull."

At that point, counsel for the plaintiff informed the court that he had completed his examination along that line, and the court made this statement to the jury: "Now, gentlemen of the jury, this line of questioning you may consider for one purpose only, and that is to determine whether or not this witness has any interest in the outcome of this case, and you are the sole judges of that. You may not consider that information for any other purpose." As far as this record shows, or counsel contended in briefs or argument, no further reference was made by plaintiff to the information elicited from the witness Haggerty that Stull had indemnity insurance, and that the insurance company would be ultimately responsible for any verdict returned against Stull and Armstrong.

In 20 Am. Jur., Evidence, § 388, the rule that has generally been followed in this jurisdiction is stated thus: "It is

a broad general rule, subject to certain qualifications, that evidence directly or indirectly showing or tending to show that the defendant in a personal injury or death action carries liability insurance, protecting himself against liability to third persons on account of his own negligence, is inadmissible. Such evidence is ordinarily irrelevant to the issues presented in such cases and upon that technical ground is properly excluded. Such evidence has no bearing upon the question of negligence and is not admissible as a fact tending to prove negligence on the part of the defendant contributing to the injury of the plaintiff or as an admission of negligence on the part of the defendant. * * *"

In *Walters* v. *Appalachian Power Co.*, 75 W. Va. 676, 84 S. E. 617, an attorney for the defendant in a personal injury case was called as a witness by counsel for the plaintiff, and required to state, over objection, that he was employed by the Fidelity and Casualty Company, and that the defendant had an insurance policy with that company indemnifying it against loss. This Court held that the admission of such evidence was reversible error.

In *Christie, Adm'r.* v. *Mitchell*, 93 W. Va. 200, 116 S. E. 715, the trial court set aside a verdict in the sum of $8,000.00 in a personal injury case, and the judgment was affirmed by this Court. One of the grounds assigned upon defendant's motion to set aside the verdict was that improper evidence had been offered by the plaintiff, consisting of the persistent questioning of witnesses respecting the suretyship of a bonding company, and, although the judgment was affirmed primarily on other grounds, the Court, quoting from *Cosselmon* v. *Dunfee*, 172 N. Y. 507, 65 N. E. 494, said: "The practice in negligence cases of asking a witness a question which counsel must be assumed to know cannot be answered—in this case, as to whether defendants carried insurance for accident to their employees—is highly reprehensible, and where the trial court or appellate division is satisfied that the verdict of the jury has been influenced thereby it should for that reason set aside the verdict."

In *Fleming* v. *Hartrick,* 105 W. Va. 135, 141 S. E. 628, the only syllabus point is as follows: "The jury should not in any manner be apprised of the fact that the defendant owner in an action for the negligent operation of an automobile is protected by indemnity insurance, and such action on the part of the plaintiff or his counsel will ordinarily constitute reversible error, notwithstanding the court may instruct the jury not to consider the same in arriving at a verdict."

In *Moorefield, Admr.* v. *Lewis,* 96 W. Va. 112, 123 S. E. 564, counsel for the plaintiff in his opening statement to the jury said: "I might say that the defendant, Mr. Lewis, has insurance." Upon objection by the defendant, the court promptly ruled that the statement was improper, and could not be considered by the jury. This Court, in affirming a judgment for the plaintiff, stated: "The trial court should have sustained the motion to discharge the jury because of counsel's effort to inject into the trial a matter so plainly erroneous and highly prejudicial to defendant; and we would be inclined to reverse the case on this ground, but for the fact that, in our opinion, a plain case for recovery has been established by the whole evidence.* * *" It has been held to be reversible error for plaintiff's counsel to inquire of the jurors, upon their *voir dire,* if they were employees of the Standard Accident Company, after making the affirmative statement that he had information to the effect that the defendant carried insurance with that company. *Adams* v. *Ice Cream Co.,* 101 W. Va. 35, 131 S. E. 867.

In *Wilkins* v. *Schwartz,* 101 W. Va. 337, 132 S. E. 887, the defendant owner of an automobile being operated as a taxicab, upon cross-examination, was asked this question by counsel for the plaintiff: "Have you or your lawyer, or the insurance company, had doctors to examine this little girl in the last few weeks?" Although the trial court instructed the jury not to consider the reference to insurance, the asking of this question was held to be reversible error in that its purpose was to apprise the jury of the fact that the defendant was protected by indemnity insurance.

This Court approved prior decisions to the same effect in *Jones* v. *Smithson, et al.,* 119 W. Va. 389, 193 S. E. 802, in holding that it was not error to refuse to permit plaintiff to ask the veniremen, upon their *voir dire,* if they were interested in a certain company which insured the defendant against damages arising from the operation of his truck. To the same effect is *Lynch* v. *Alderton,* 124 W. Va. 446, 20 S. E. 2d 657.

In *Oldfield* v. *Woodall,* 113 W. Va. 35, 166 S. E. 691, a witness for defendant was asked, upon cross-examination by counsel for the plaintiff in a personal injury case, what his business was at the time of the accident, and a short time thereafter, to which he answered that he was in the insurance business. This question was asked, and this answer made: "Q: You were an insurance adjuster, were you not?" "A: No, sir, I never have been. I have been an insurance agent but no adjuster." Counsel for defendant moved for a mistrial, the motion was overruled, and this Court in its opinion said: "We cannot see wherein anything in the foregoing could be construed as indicating to the jury that insurance was involved in the case. As indicated by the trial court, such examination is ordinarily proper as going to the credibility of the witness. Counsel for plaintiff insisted that witness' occupation was very material in view of the apparent interest shown at the time of the accident. We can see wherein an adjuster might unwittingly be prejudiced against a plaintiff in such a case. This would seem to be the only purpose that counsel could have had in pressing the question whether he was in fact an adjuster. Nothing is shown as to the class of insurance engaged in by witness; and as already indicated, there is nothing in the questioning that indicates in the least that insurance was carried, if at all, by the defendant.* * *"

Although it is urged by counsel that the precise question presented in this assignment of error is one of first impression in this State, the case of *Covington* v. *Navarre,* 99 W. Va. 431, 129 S. E. 313, has not been referred to in brief or argument. In an action for personal injury, the jury returned a verdict for the plaintiff in the sum of

$2,500.00, and judgment was entered thereon. The principal assignment of error urged upon this Court, upon the granting of a writ of error, was certain questions asked and answered by a witness for the plaintiff upon redirect examination. The witness, upon cross-examination, was presented with a prior written statement concerning the automobile collision out of which the action arose for the evident purpose of contradicting the direct testimony of the witness. Upon redirect examination, counsel for the plaintiff elicited information from the witness to the effect that the statement had been taken about six months previously, and shortly after the collision, by a man, identified by the witness as sitting at the bar. After further examination as to where the statement was made, and who prepared it, this question was asked: "Did he tell you who he was representing?", to which the witness answered: "I think he was representing some insurance company." The court immediately instructed the jury "to absolutely ignore that answer and pay no attention to it or in any wise let it influence your verdict in any manner, shape or form, and, as far as the human mind can eliminate it, to eliminate it from your consideration in any way in this case." Counsel for the plaintiff immediately informed the jury that he did not anticipate the answer. Witness was then asked, by counsel for the plaintiff, what inducement, if any, was made to him relative to the signing of the statement, and he answered: "Well, he told me if I would sign it there would not be nothing more of it, he was representing the insurance company—.", whereupon counsel stated: "I don't want that.", and the court informed the witness: "We told you not to tell that." This Court, in holding that the interrogation of this witness was not reversible error, said:

> "It is claimed that the evidence of the witness, indicating that the defendant was protected by indemnity insurance, constitutes reversible error. To this contention the record suggests the following answers.
>
> "(a) The defendant did not object to the evidence in question;

"(b) The jury was instructed to disregard it; and

"(c) It does not appear that counsel for the plaintiff could have anticipated the objectionable answers of the witness.

"In view of these facts, a reversal of the judgment on the ground here advanced would be unfair to the plaintiff. She was entitled to show the circumstances under which the written statement had been obtained, the defendant not having seen fit to do so; and the questions propounded by her counsel were proper for that purpose.* * *"

In 20 Am. Jur., Evidence, § 391, it is stated that: "Facts tending to show interest, bias, or motive on the part of a witness may be elicited on cross-examination, although such examination may necessarily disclose that the defendant is protected by insurance. Thus, where the hostile character of a witness or his exact status in the case cannot be shown because his answer will reveal that the defendant has liability insurance, an exception is created to the broad rule respecting evidence of the defendant's insurance."

In 58 Am. Jur., Witnesses, § 646, the following appears: "It is a settled general rule that it is improper to cross-examine the defendant or his witnesses in a personal injury action to show that he is indemnified from loss by an insurance company, since such examination is immaterial to any issue in the case. However, the rule is subject to some qualifications. A cross-examination to show bias is not rendered improper because it may show the interest of an insurance company in the case. Thus, it may be shown on cross-examination of a physician who made a physical examination of the plaintiff, as bearing on his interest, bias, or prejudice, that he did so for, or sent his report to, an insurance company. A like rule has been declared with respect to an attorney taking the witness stand on behalf of his client." Numerous cases from other jurisdictions are cited in annotations to both sections. The question is discussed by Blashfield, in his work on Law of Automobiles, § 6298, wherein he states the rule as

follows: "It is always permissible to elicit facts, on cross-examination, which tend to show either bias or partiality of a witness, or which otherwise tend to discredit testimony, even though such cross-examination may disclose that the defendant was protected by insurance. For example, it may be brought out on cross-examination that a witness is, or has been, employed by defendant's insurer."

In the recent case of *Highway Express Lines, Inc.* v. *Fleming,* 185 Va. 666, 40 S. E. 2d 294, several witnesses for the plaintiff in a personal injury case were contradicted by one Gibson, a witness for the defendant, the latter being an agent of defendant's insurance carrier. It appeared that Gibson, as such agent, had taken statements from some of the witnesses for the plaintiff shortly after the collision, and in his testimony contradicted the testimony of the plaintiff's witnesses upon pertinent and vital matters in issue. Upon denial by Gibson that he had any interest in the outcome of the litigation, the trial court being informed that he was an agent of the insurance company, and had made an investigation of the accident, counsel for the plaintiff was permitted to examine the witness, and elicit from him the fact that he was an agent for the company, and had made an investigation in its behalf. The trial court ruled that these facts were admissible and relevant, as tending to establish the interest of the witness in the outcome of the litigation. The Supreme Court of Appeals, in affirming a verdict for the plaintiff, had this to say with reference to the cross-examination of the witness Gibson:

"It did not appear in any of the Virginia cases cited that the fact that defendant carried liability insurance was admissible on any ground other than that such carrier was the party ultimately liable. The evidence in the case at bar was clearly admissible under the well settled rule that a litigant has a right to establish facts and circumstances tending to show the interest, bias or prejudice of a hostile witness. Both rules cannot be applied in this case. The facts tending to show the interest or bias of the witness cannot be admitted without establishing the fact that the defendant carried liability insurance. 'In this Scylla-and-Charybdis

dilemma most Courts have attempted to concede something to each of the opposing principles, i.e. by allowing the questions when properly asked' either of a juror on his voir dire or of a witness to establish his interest or bias. 2 Wigmore on Evidence, 3d Ed., sec. 282a.

"The activity of this witness in preparation for the trial and his testimony on direct examination made it imperative for the jury to know his full relation to the named defendant and the insurance carrier. He, as a paid employee, visited the scene a few days after the accident. He interviewed numerous witnesses and reduced their statements to writing. In the trial he was introduced by the defendant in an attempt to discredit or impeach the testimony of numerous witnesses introduced by plaintiff. The jurors, in deciding whether defendant was negligent, had to determine what weight, if any, they must give to the testimony of the agent for the insurance carrier. If they accepted his testimony, they had to discard the testimony of many of plaintiff's witnesses. Under these circumstances, the jurors were entitled to know his interest or bias and his relation to the party ultimately liable. As Judge Soper said, in Sprinkle v. Davis, 4 Cir., 111 F. 2d 925, 128 A. L. R. 1101, such evidence should be admitted for the value the jury may accord to it. The trial court, if requested by proper instruction, should inform the jury of the purpose for which such evidence was admitted."

To the same general effect are: *McAndrews* v. *Leonard,* (Vt.), 134 Atl. 710; *Raymond* v. *Rutland Power & Light Co.,* 90 Vt. 373, 98 Atl. 909; *Miss. Ice & Utilities* v. *Pearce,* (Miss.), 134 So. 166; *Woodward* v. *Wilbur,* (R. I.), 169 Atl. 486.

This Court is firmly committed to the rule that a plaintiff in a personal injury or wrongful death case may not, for the reasons ably stated in the cases heretofore cited in this opinion, improperly inform the jury of the fact that the defendant is protected by indemnity insurance. Thus, a shield has been provided for the protection of insurance companies. However, this shield must not be converted into an offensive weapon to be used for a pur-

pose not contemplated by the rule. The unpleasant situation in which this insurance company found itself was not created by the plaintiff, her counsel, or witnesses. When Haggerty was placed upon the witness stand by the defendant, under the circumstances revealed by this record, and in view of the admonition given to the jury by the trial court, it was not improper for the plaintiff to ask the questions, heretofore quoted, and to receive the answers made thereto, so that the jury might consider that information in determining Haggerty's interest in the case, or bias in favor of the defendants, in weighing his testimony.

We find no reversible error in this record, and, accordingly, the judgment of the Circuit Court of Nicholas County is affirmed.

*Affirmed.*